**Dorothy GAUTREAUX et al., Plaintiffs-Appellants,**

**v.**

**George W. ROMNEY, Secretary of the Department of Housing and Urban Development, Defendant-Appellee.**

**No. 71–1073.**

United States Court of Appeals, Seventh Circuit.

Sept. 10, 1971.

Alexander Polikoff, Bernard Weisberg, Merrill A. Freed, Charles R. Markels, Milton I. Shadur, Stuart R. Cohn, Cecil C. Butler, Chicago, Ill., for plaintiffs-appellants.

Alan S. Rosenthal, Anthony J. Steinmeyer, Dept. of Justice, Washington, D. C., William J. Bauer, U. S. Atty., L. Patrick Gray, III, Asst. Atty. Gen., Chicago, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

DUFFY, Senior Circuit Judge.

This suit is brought against the Secretary of the Department of Housing and Urban Development (HUD). Plaintiffs are all Negro tenants or applicants for public housing in the City of Chicago. They seek, on behalf of themselves and all other Negroes similarly situated, a declaration that the Secretary has "assisted in the carrying on * * * of a racially discriminatory public housing system, within the City of Chicago, Illinois." Plaintiffs further seek to enjoin the Secretary from making available to the Chicago Housing Authority any federal financial assets to be used in connection with or in support of the racially discriminatory aspects of the Chicago public housing system. "Such other and further relief as the Court may deem just and equitable" is also requested.

Stated another way, the complaint herein challenges the role played by HUD [1] and its Secretary in the funding and construction of certain public housing in the City of Chicago. The role played by the Chicago Housing Authority (CHA), which is not a party to this suit, in the construction of the same public housing already has been held to have been racially discriminatory (Gautreaux v. Chicago Housing Authority, 296 F. Supp. 907 (N.D.Ill., 1969).[2] Further con-

---

1. The Department of Housing and Urban Development was created by Public Law #89–174, enacted on September 9, 1965. All duties of the Public Housing Administration and other predecessor agencies were transferred to the authority of HUD by that law. We shall refer to HUD as both the predecessor and present agency.

2. Because of the racial distinctions expressly found to be present in the tenant assignment and site selection practices involved in the public housing sites at issue in the CHA case and in this present suit, we do not deal with a situation such as confronted the Supreme Court in its recent decision of James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971).

struction of public housing by CHA on a segregated site selection basis has been permanently enjoined. (304 F.Supp. 736). A good many of the facts pertaining to this present controversy are reported at 296 F.Supp. 907; 304 F.Supp. 736 and in this Court's decision at 436 F.2d 306 (7 Cir., 1970), cert. den. 402 U.S. 922, 91 S.Ct. 1378, 28 L.Ed.2d 661 (1971). We shall avoid unnecessary repetition where possible.

The complaint in this case was filed simultaneously with the complaint in the Gautreaux v. CHA case, an order of the District Court stayed all proceedings in this suit until disposition of the companion CHA case. Defendants moved to dismiss the complaint herein and filed certain affidavits and documents in support of said motion. On October 31, 1969, plaintiff moved for summary judgment under Rule 56 (F.R.Civ.P.) asserting that no dispute as to any material fact existed.

On September 1, 1970, the District Court entered its memorandum opinion dismissing all four counts of this complaint. Count I had been brought under the general federal question statute (28 U.S.C. § 1331) and the Fifth Amendment to the United States Constitution. It alleged that the Secretary, through his action in funding and approving CHA's racially discriminatory programs, had violated the Due Process Clause of that amendment. The Court first found that plaintiffs had standing to bring suit under all counts and that the requisite jurisdictional amount was present. The Court then concluded that "the Fifth Amendment under the circumstances here alleged [did] not authorize this suit." This ruling was a holding that there was a lack of jurisdiction to bring Count I.

Jurisdiction as to Count II was grounded on 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4). Count II alleged that the Secretary's acts had violated 42 U.S.C. § 2000d (Section 601 of the Civil Rights Act of 1964). The District Court dismissed Count II for failure to state a claim upon which relief could be granted.[3] The Court's dismissal was based upon the finding that HUD's financial assistance to CHA was insufficient to make it a "joint participant" in CHA's racially discriminatory conduct.

Counts III and IV were identical with Counts I and II respectively, except that deliberate discriminatory conduct on the part of CHA had not been alleged. The District Court dismissed these counts for failure to allege such deliberate CHA action.

Finally, the Court expressed the view that the doctrine of sovereign immunity was, in part, applicable to bar this suit.

This appeal followed. The Government has abandoned both the lack of jurisdiction as to Count I and sovereign immunity as possible grounds for affirmance. Plaintiffs have not strongly contested the dismissal of Counts III and IV of the complaint. Thus, the central question presented for review reduces to whether summary judgment in favor of either party is proper on Counts I or II of the complaint. The Government argues that the District Court's grant of summary judgment in its favor is proper and advances as an additional ground for affirmance the contention that the case is now moot.

The Government's position on appeal is that this present suit is somewhat superfluous inasmuch as full and complete equitable relief has been made available to these same plaintiffs through the Gautreaux v. Chicago Housing Authority case. See: 296 F.Supp. 907; 304 F.Supp. 736. The Government is said to be in complete agreement with the "aims and objectives" of that case and that proposition is not strongly contested by the plaintiffs here.

We understand this contention by the Secretary to bear upon only two issues: mootness, and the scope of any equita-

---

3. Since supporting affidavits and other documents had been submitted by both parties, this should actually be treated as the grant of a motion for summary judgment. Rule 12(b), Rule 56 F.R. Civ.P.

ble relief which might be deemed necessary by the District Court. The second issue, the extent of possible equitable relief is extremely important, but is not before this Court on this present appeal. We deal here only with whether summary judgment in favor of either party is proper on the issue of the Secretary's alleged *liability* for events which occurred in prior years. Liability for past conduct is totally separate from the question of appropriate future relief. In deciding the liability issue, it would thus not be appropriate for us to consider the effect which the decree entered in the companion case (304 F.Supp. 736) might have in *minimizing* the need for an extensive decree in this suit.

■ Similarly, a determination of just what type of equitable remedy might be appropriate in cases of this sort is a question best left initially to the sound discretion of the District Court. Brown v. Board of Education (Brown II), 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). Even though to the writer of this opinion it might appear that extensive relief would not be necessary, we do not, in any way, wish to anticipate the District Court on an issue properly for its decision.

Thus, the only issue presently before us which might be affected by the entry of the Gautreaux v. CHA injunction is mootness. We shall consider the effect of the prior injunction as it bears on that issue.

Before turning to the issues, however, this Court wishes to state its strong support for the actions of the District Judge throughout the course of this entire litigation. The District Judge who decided the Gautreaux v. CHA case and who has supervised the decree entered there-

to, is the same District Judge who dismissed this present suit. The administration of the decree in the former case has unquestionably been a difficult and time-consuming task, presenting unique problems for resolution,[4] and generating enormous public interest. This Court would be extremely reluctant to interfere with the exercise of that District Judge's sound discretion in matters pertaining to this controversy, and no statement in this opinion should be so construed. Nevertheless, since important issues of law are presented by this appeal and since the basis of the District Court's dismissal of this present suit below seems to have been a feeling that "the putative limits [of the Court's] powers" had been "effectively circumscribed," rather than a feeling that discretion dictated the dismissal of a suit thought to be unnecessary, it is apparent that review by this Court is compelled.

## JURISDICTION AS TO COUNT I.

■ Since courts always are free to review jurisdiction, we shall examine this point briefly even though not contested by defendant on appeal. We find jurisdiction under 28 U.S.C. § 1331 and the Fifth Amendment to be present in this case. The jurisdictional statute, speaks in alternative terms with respect to the "Constitution, laws, *or* treaties of the United States * * *."[5] Thus, a plain reading would seem to encompass a suit of this present type which directly challenges conduct alleged to have violated the Fifth Amendment. That such a reading is correct was settled by the Supreme Court in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) where the Court held that: "* * * where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court * * * must entertain the suit."

4. For an account of at least one set of unique problems confronting the District Judge see this Court's opinion in Gautreaux v. Chicago Housing Authority, 436 F.2d 306.

5. The statute reads in full: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and arises under the Constitution, laws, or treaties of the United States."

327 U.S. 681–682, 66 S.Ct. 776. See also: Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Hicks v. Weaver, 302 F.Supp. 619 (D.La., 1969). Jurisdiction would still exist even though we were of the opinion that no cause of action under Count I had been stated. Bell v. Hood, *supra*, 327 U.S. at 682, 66 S.Ct. 773. Since all other requirements under 28 U.S.C. § 1331 have been met, we find that jurisdiction is present under Count I to bring a suit in equity challenging alleged racial discrimination which is said to have violated the Fifth Amendment.[6]

## SOVEREIGN IMMUNITY.

■ Since the defendant has chosen to abandon any claim of sovereign immunity on appeal, we do not think that that point merits an extended discussion on our part. In any case, the doctrine does not bar a suit such as this which is challenging alleged unconstitutional and unauthorized conduct by a federal officer. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Bolling v. Sharpe, *supra*; Shannon v. HUD, 436 F.2d 809 (3 Cir., 1970). See also: Powelton Civic Home Owners Association v. HUD, 284 F.Supp. 809 (E.D.Pa., 1968); Hicks v. Weaver, *supra*.

## MOOTNESS:

As noted previously, this appeal follows the entry of an extensive Judgment Order in Gautreaux v. Chicago Housing Authority, 304 F.Supp. 736, as modified in 436 F.2d 306. The decree provides in part that CHA shall not "* * * seek any approval or request or accept any assistance from any government agency with respect thereto * * *" unless the plan for such assistance complies with other provisions of the Court's decree. The Secretary contends that HUD's stated full agreement with the aims and objectives of the Judgment Order, along with the issuance of an injunction against the exact practices now before us, make this present controversy moot.[7]

■ To some extent, the Secretary's argument is that its own voluntary promise to abide by the decision in the companion case and to stop any further racially discriminatory acts on its part is a viable ground for this Court to dismiss for mootness. We have no doubt that such assertions are offered in good faith, but we do not think that they are sufficient for us to hold this appeal moot. It long has been held that "* * * voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." United States v. W. T. Grant, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

■ A more persuasive argument is that the injunction entered in Gautreaux v. CHA renders this controversy moot since CHA is now prohibited from "accept[ing] any assistance from [HUD]" unless CHA's programs strictly comply with the specifications of the decree in that case. Thus, it is argued, a ruling here would be merely "advisory," lacking "concrete legal issues, presented in actual cases * * *." United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947), quoted in Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

We conclude, however, that the entry of the companion decree does not make this suit moot. The fact that some of the injunctive relief originally requested is no longer possible does not affect the issues presently before us. "Where several forms of relief are requested and one of these requests subsequently becomes moot, the Court has still consid-

---

6. We agree with the District Court that the requisite jurisdictional amount has been stated.

7. Had the cases been consolidated and decided together, the possibility of mootness would not, of course, have arisen. Thus, in Hicks v. Weaver, *supra*, the Court entered an injunction against *both* the local housing authority and the Secretary of HUD.

ered the remaining requests." Powell v. McCormack, 395 U.S. 486, 496, n. 8, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). In this suit, both declaratory and injunctive relief against construction of specific projects was originally sought. Since some of those projects now have been completed, it is obvious that full injunctive relief in favor of plaintiffs cannot now be given. But that fact does not, of itself, make this case moot. Shannon v. HUD, *supra*, 436 F.2d at 822.[8] At the present time, a declaratory judgment as well as such "other and further relief as the court may deem just and equitable" is requested.

Plaintiffs have contended that such "other and further relief" might include a more vigorous utilization of the several different types of housing programs which HUD administers in the form of a decree aimed at " * * * remedying the continuing effects of the discrimination of the past." [9] Such a decree arguably would represent an equitable remedy going beyond the scope of relief made available through the companion case and, it is contended, might facilitate the overall desired goal of desegregating the public housing sites around Chicago metropolitan area. We express no view on whether such requested relief is either necessary or appropriate. However, as long as a decree utilizing certain HUD programs still remains a possible form of relief not already available through the other case, this Court cannot deem the controversy moot. Powell v. McCormack, *supra*.

Moreover, even if only the declaratory judgment were demonstrated to be appropriate at this time, this Court would not necessarily be compelled to dismiss for mootness as long as the requisite "case" or "controversy" exists. "A court may grant a declaratory relief even though it chooses not to issue an injunction or mandamus. * * * A declaratory judgment can then be used as a predicate to further relief, including an injunction." Powell v. McCormack, *supra*, 395 U.S. at 499, 89 S.Ct. at 1952.

Contrary to the Secretary's arguments, we do not think that the controversy here has been rendered "abstract" by the injunction against CHA's further use of federal funds in a manner not in compliance with the Gautreaux v. CHA plan. A determination of whether or not the Secretary's own past conduct violated the Constitution or applicable federal statute remains very much of an open question. The entry of a declaratory judgment here would have significant consequences in determining the extent of any "further relief" deemed necessary, in the event that practices found to be discriminatory were resumed. Most important of all, the decree in the CHA case, thorough though it may be, is not binding against HUD or its Secretary.[10] Thus, at the present time, plaintiffs are in the anomalous position of having the full force of the federal judicial power at their command to enforce proven rights against CHA, yet having to rely solely on the voluntary promises of a party whose role is equally important, whose

8. The *Shannon* court stated: "The defendants suggest that because the project has been completed and occupied by rent supplement tenants there is no longer any relief which may feasibly be given. The *completion of the project and the creation of intervening rights of third parties does indeed present a serious problem of equitable remedies.* It does not, however, make the case moot in the Article III sense. Relief can be given in some form."

9. For example, we are advised that "Section 236 Housing" is a low income hous-

ing program designed to increase the flow of such housing by favorable interest assistance payments to the mortgage lender. Unlike the public housing programs now before us, local governmental approval is not required for such housing to be constructed. See also: "Section 235" and "Section 231" housing programs.

10. Thus this suit is unlike Watkins v. CHA, 406 F.2d 1234, (7 Cir., 1969) where reinstatement of previously evicted named plaintiffs rendered the cause moot, as between the original parties to that same case.

decisions pertaining to this matter may prove to be among the best means of insuring full compliance with the "aims and objectives" of the CHA decree,[11] but who never has been a party to that case or bound by its terms.

Under such circumstances, we must conclude that the issues before us are "capable of repetition yet evading review" and that the case is not moot. Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), quoted in Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). Viewed another way, we are confronted here with " * * * a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, *supra*, 394 U.S. at 108, 89 S.Ct. at 959.

### WHETHER A CLAIM IS STATED UNDER THE FIFTH AMENDMENT OR SECTION 601 OF THE 1964 CIVIL RIGHTS ACT

We turn then to the merits. The Government admits that HUD approved and funded CHA-chosen regular family housing sites between 1950 and 1969, knowing that such sites were not "optimal" and that the reason for their exclusive location in black areas of Chicago was that "sites other than in the south or west side, if proposed for regular family housing, invariably encounter[ed] sufficient opposition in the [Chicago City] Council to preclude Council approval." (Letter from a Public Housing Administration Official to the Chairman of the West Side Federation, October 14, 1965).

Nevertheless, the District Court found that HUD had followed this course only after having made "numerous and consistent efforts * * * to persuade the Chicago Housing Authority to locate low-rent housing projects in white neighborhoods." That finding is not directly challenged on appeal. Moreover, given the acknowledged desperate need for public housing in Chicago,[12] HUD's decision was that it was better to fund a segregated housing system than to deny housing altogether to the thousands of needy Negro families of that city.

On review of the District Court's action, we shall treat all of the above facts as true. The question then becomes whether or not, even granting that "numerous and consistent efforts" were made, HUD's knowing acquiescence in CHA's admitted discriminatory housing program violated either the Due Process Clause of the Fifth Amendment or Section 601 of the Civil Rights Act of 1964.[13] Given a previous court finding of liability against CHA (296 F.Supp. 907), the pertinent case-law compels the conclusion that both of these provisions were violated.

HUD's approval and funding of segregated CHA housing sites cannot be excused as an attempted accommodation of an admittedly urgent need for housing with the reality of community and City Council resistance. This question was

11. Favorable HUD action, for example, might have been a factor in the district court's decision to modify the "best efforts" clause of the original Judgment Order in that case so as to order submission of approximately 1500 sites to the City Council in accordance with a specific timetable. See: 436 F.2d 306, 310.

12. The Government's brief points to affidavits submitted by many of the present plaintiffs which starkly illustrate that fact. Plaintiff Gautreaux has accepted public housing in Negro areas only because she had been living in a one bedroom apartment with a family of six. Plaintiff Odell Jones had moved to segregated public housing with his wife and three children to escape their two rooms in which "the rats had begun to run over the house at will."

13. "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

argued and settled in the companion case as to these exact housing sites and the same City Council. The District Judge there well stated the applicable rule:

"It is also undenied that sites for the projects which have been constructed were chosen primarily to further the praiseworthy and urgent goals of low cost housing and urban renewal. Nevertheless, a deliberate policy to separate the races cannot be justified by the good intentions with which other laudable goals are pursued." (296 F. Supp. at 914).

This court applied much the same rule in affirming a modification of the Judgment Order in the companion decision and in ordering submission of 1500 HUD approved sites to the City Council in accordance with a specific timetable. In rejecting a plea for delay, we pointed to several cases holding " * * * that 'abstention' is inappropriate in constitutional cases of this sort and that community hostility is no reason to delay enforcement of proven constitutional rights." (436 F.2d at 312.)

■ Courts have held that alleged good faith is no more of a defense to segregation in public housing than it is to segregation in public schools. Gautreaux v. Chicago Housing Authority, 296 F.Supp. 907; Kennedy Park Homes Assn. v. City of Lackawanna, 436 F.2d 108 (2 Cir., 1970), cert. den. 401 U.S. 1010, 91 S.Ct. 1256, 28 L.Ed.2d 546 (1971). Moreover, the fact that it is a *federal* agency or officer charged with an act of racial discrimination does not alter the pertinent standards, since " * * * it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government." Bolling v. Sharpe, *supra*, 347 U.S. at 500, 74 S.Ct. at 695. See also: Green v. Kennedy, 309 F.Supp. 1127, 1136 (D.C. D.C.1970), appeal dismissed 398 U.S. 956, 90 S.Ct. 2169, 26 L.Ed.2d 539 (1970). The reason for courts' near uniform refusal to examine purported good faith motives behind alleged discriminatory

acts was, perhaps, most succinctly put by the Supreme Court in Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1963): "It is of no consolation to an individual denied the equal protection of the laws that it was done in good faith."

The fact that a governmental agency might have made "numerous and consistent efforts" toward desegregation has not yet been held to negate liability for an otherwise segregated result. Thus, for example, in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958) the local school board admittedly had been "going forward with its preparation for desegregating the Little Rock [Arkansas] school system" (358 U.S. at 8, 78 S.Ct. at 1405), but was still held liable when it abandoned those plans in the face of stiff community and state governmental resistance. See also: Watson v. City of Memphis, 373 U.S. 526, 535, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963); Green v. Kennedy, *supra*, 309 F.Supp. at 1136.

With the foregoing considerations in mind, then, it is apparent that the "dilemma" with which the Secretary no doubt was faced and with which we are fully sympathetic, nevertheless cannot bear upon the question before us. For example, we have been advised that any further HUD pressure on CHA would have meant cutting off funds and thus stopping the flow of new housing altogether. Taking this assertion as true, still the basis of the "dilemma" boils down to community and local governmental resistance to " * * * the only constitutionally permissible state policy * * *." Green v. Kennedy, *supra*, at 1137, a factor which, as discussed above, has not yet been accepted as a viable excuse for a segregated result. So, even though we fully understand the Secretary's position and do not, in any way, wish to limit the exercise of his discretion in housing related matters, still we do not feel free to carve out a wholly new exception to a firmly established general rule which, for at least the last sixteen years, has governed the stand-

ards of assessing liability for discrimination on the basis of race.[14]

■ Turning to the facts now before us, there can be no question that the role played by HUD in the construction of the public housing system in Chicago was significant. The great amount of funds for such construction came from HUD. Between 1950 and 1966 alone HUD spend nearly $350,000,000 on CHA projects. The Secretary's trial brief acknowledged that "in practical operation of the low-rent housing program, the existence of the program is entirely dependent upon continuing, year to year, Federal financial assistance." We find no basis in the record with which to disagree with that conclusion. Moreover, within the structure of the housing programs as funded, HUD retained a large amount of discretion to approve or reject both site selection and tenant assignment procedures of the local housing authority. HUD's "Annual Contributions Contract" contained detailed provisions concerning program operations and was accompanied by eight pages of regulations on the subject of site selection alone.

It also is not seriously disputed on appeal that the Secretary exercised the above described powers in a manner which perpetuated a racially discriminatory housing system in Chicago, and that the Secretary and other HUD officials were aware of that fact. The actual aspects of that segregated system are fully described at 296 F.Supp. 907 and we shall not recount them here. The fact that HUD knew of such circumstances is borne out by the District Court's specific finding in this suit that HUD tried to block "the activity complained of, succeeded in some respects, but continued funding knowing of the possible action the City Council would take." This finding is supported by, among other record items, the HUD letter to the West Side Federation previously referred to (page 737) and by the affidavit of HUD official Bergeron recalling his unsuccessful attempts in the early 1950s "to enlist [Mayor Kennelly's] assistance in having project sites located in white neighborhoods."

On such facts, and given the inapplicability of HUD's "good faith" arguments, we are unable to avoid the conclusion that the Secretary's past actions constituted racially discriminatory conduct in their own right.[15] The fact that the Secretary's exercise of his powers may have more often reflected CHA's own racially discriminatory choices than it did any ill will on HUD's part, does not alter the question now before us.

We are fully sympathetic to the arguments advanced by the Government on appeal, especially, as mentioned above, to the very real "dilemma" which the Secretary faced during these years. On the other hand, against such considerations are not only the principles of law discussed heretofore, but also two recent decisions which hold against this same defendant (or predecessor) and which deal with similar facts. Shannon v. HUD, *supra*; Hicks v. Weaver, *supra*. We do not think we should ignore those cases.

14. " * * * it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them." Brown v. Board of Education (Brown II), *supra*, 349 U.S. at 300, 75 S.Ct. 753 at 756.

15. Our holding thus is not based on the "joint participation" doctrine set forth in Burton v. Wilmington Parking Authority, *supra*, and relied upon in the District Court litigation below. We need not discuss the applicability of that doctrine, for it is concerned with a different inquiry, namely, "upon identifying the requisite 'state action'". (Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 1796, 29 L.Ed.2d 338) sufficient to render admitted discrimination actionable under the Fourteenth Amendment. In any event, contrary to the Government's assertions on appeal, "joint participation" already has been "extended" to federal government operations. Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4 Cir., 1963), cert. den. 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659; Smith v. Hampton Training School for Nurses, 360 F.2d 577 (4 Cir., 1966).

In holding the Secretary liable on nearly identical facts as are now before us, the *Hicks* court reasoned as follows:

"As noted above, HUD was not only aware of the situation in Bogalusa [Louisiana] but it effectively directed and controlled each and every step in the program. * * * HUD thus sanctioned the violation of plaintiffs' rights and was an active participant since it could have halted the discrimination at any step in the program. Consequently, its own discriminatory conduct in. this respect is violative of 42 U.S.C. § 2000d." (302 F.Supp. at 623).

Likewise, in *Shannon* the Third Circuit recently enjoined further action on a HUD decision to change a proposed housing project in Philadelphia from the originally contemplated owner occupied buildings to a 100% rent supplement assistance program (which was found to be the "functional equivalent of a low rent public housing project.") (436 F.2d at 819). The *Shannon* court acknowledged that HUD was vested with broad discretion to supervise its various programs, but held, nevertheless, that " * * * that discretion must be exercised within the framework of the national policy against discrimination in federally assisted housing * * * and in favor of fair housing. * * *" (436 F.2d at 819.)

We can find no viable basis for distinguishing the *Hicks* and *Shannon* decisions. The Secretary contends that the relief requested in those two cases differed from that which is sought here. The Government's argument is entirely correct, but has no bearing on the issue of actual liability which, as mentioned previously (page 136) is the only issue now before this Court. The Government's further contention, advanced at oral argument, that *Shannon* should be distinguished as involving only a more stable integrated neighborhood trying to stave off additional public housing, is also factually correct, but legally insignificant. Such a factor might arguably af-

fect the standing of individual plaintiffs to bring suit, but it does not alter the pertinent standard for answering the question of whether or not racial discrimination in the funding and approval of particular programs has occurred.

Finally, we emphasize, as did the *Shannon* court, that " * * * there will be instances where a pressing case may be made for the rebuilding of a racial ghetto." (436 F.2d at 822.) However, the situation before us now *already* has been held not to constitute such a pressing case, and such is the determinative factor. Where the Court in the companion decision previously has held that CHA's "deliberate policy to separate the races cannot be justified by the good intentions with which other laudable goals are pursued" (296 F.Supp. at 914), it is not possible with consistency to apply a lesser standard against HUD in assessing whether it too is liable for its role on the same identical facts.

So, even while we are fully sympathetic to the arguments advanced by the Secretary on appeal, we must conclude that the great weight of the caselaw favors plaintiffs' position. Since there exist no controverted issues of material fact, we conclude that summary judgment should be granted in plaintiffs' favor on both Counts I and II of the complaint. We hold that HUD, through its Secretary, violated the Due Process Clause of the Fifth Amendment (Bolling v. Sharpe, *supra*; Hicks v. Weaver, *supra*) and also has violated Section 601 of the Civil Rights Act of 1964 (Shannon v. HUD, *supra*; Hicks v. Weaver, *supra*).

In so holding we state *only* that the Secretary must be adjudged liable on these particular facts and again point out that our holding should not be construed as granting a broad license for interference with the programs and actions of an already beleaguered federal agency. It may well be that the District Judge, in his wise discretion, will conclude that little equitable relief above the entry of a declaratory judgment and a simple "best efforts" clause will be nec-

essary to remedy the wrongs which have been found to have been committed.

Such considerations, however, are not the subject for present decision, and we defer to the District Court for their resolution.

Remanded.