**Dorothy GAUTREAUX et al., Plaintiffs,**

**v.**

**CHICAGO HOUSING AUTHORITY et al., Defendants.**

**Nos. 66 C 1459, 66 C 1460.**

United States District Court, N. D. Illinois, E. D.

April 10, 1972.

Alexander Polikoff, Charles R. Markels, Bernard Weisberg, Milton I. Shadur, Chicago, Ill., for plaintiffs.

Kathryn M. Kula, Mayer, Brown & Platt, Seymour F. Simon, Lee A. Freeman, Jr., Harold T. Berg, Fiffer & D'Angelo, Lawrence P. Hickey, Alex Elson, Richard L. Curry, Corp. Counsel, Wilson Frost, Thomas E. Keane, Claude W. B. Holman, John J. Hoellen, Chicago, Ill., Marylou Hedlund, Patrick W. O'Brien, Chicago, Ill., for other defendants.

James R. Thompson, U. S. Atty., James C. Murray, Asst. U. S. Atty., Dept. of Housing & Urban Development, for G. W. Romney.

## ORDER

AUSTIN, District Judge.

Previous stages of this litigation are described in D.C., 296 F.Supp. 907, D.C., 304 F.Supp. 736, 7th Cir., 436 F.2d 306, and 7th Cir., 448 F.2d 731. The stage now to be dealt with follows a trial held with respect to the supplemental complaint filed on February 2, 1972, and the pleadings and motions relating thereto, and a hearing respecting "Plan II" of defendant Chicago Housing Authority ("CHA"), filed on February 2, 1972, pursuant to this Court's order of January 3, 1972, such trial and hearing having been consolidated by previous order of this Court. The phrases "Dwelling Unit" and "General Public Housing Area" shall have the same meaning herein as in the Court's judgment order of July 1, 1969 ("Judgment Order"), 304 F.Supp. 736. Based on the pleadings and the evidence the Court makes the following findings of fact and reaches the following conclusions of law:

### FINDINGS OF FACT

A. Pursuant to previous orders of this Court CHA is under a duty to use its best efforts to increase the supply of Dwelling Units in conformity with the Judgment Order as rapidly as possible.

B. To that end, and pursuant to orders of this Court, on March 5, 1971 CHA submitted to the defendant members of the City Council ("Council") of the defendant City of Chicago ("City"), and to the Chicago Plan Commission, an agency of the City, proposed sites for the provision of not fewer than 1500 Dwelling Units.

C. Acquisition of such sites or alternative sites by CHA is necessary to enable CHA to increase the supply of Dwelling Units in conformity with the Judgment Order as rapidly as possible.

D. Under the following provision of Section 9, Ch. 67½, Illinois Revised Statutes, CHA may not acquire real property until the acquisition thereof has been approved by the Council:

"If the area of operation of a housing authority includes a city, village or incorporated town having a population in excess of 500,000 as determined by the last preceding Federal census, no real property or interest in real property shall be acquired in such municipality by the housing authority until such time as the housing authority has advised the governing body of such municipality of the description of the real property, or interest therein, proposed to be acquired, and the governing body of the municipality has approved the acquisition thereof by the housing authority."

E. On and prior to July 1, 1971, the City (through two of its agencies) and the Council approved the acquisition of certain real property by CHA which is presently sufficient to provide fewer than 200 Dwelling Units in conformity with the Judgment Order.

■ F. Since July 1, 1971, no committee of the Council has conducted hearings with respect to, and neither the City nor the Council has approved the acquisition of, any real property by CHA for the purpose of providing Dwelling Units in conformity with the Judgment Order.

G. Such failure to conduct hearings and to approve any such acquisition since July 1, 1971 ·is unjustified, there having been no showing of supervening necessity therefor, or indeed any showing of any necessity or reason at all, and the evidence having shown that many of the sites referred to in paragraph B above are suitable for the provision of Dwelling Units.

H. Such failure to conduct hearings and approve acquisition has the effect of preventing CHA from providing additional Dwelling Units in conformity with the Judgment Order, thereby denying relief to the plaintiffs to which they are entitled and frustrating and preventing this Court from assuring that such relief is provided.

CONCLUSIONS OF LAW

■ A. Under the evidence in this case, the effect of the failures of the City and Council since July 1, 1971 to approve any acquisition of real property by CHA for the purpose of providing additional Dwelling Units in conformity with the Judgment Order has been and continues to be to thwart the correction of federal constitutional wrongs. Such failures may not be permitted to thwart such correction. Crow v. Brown, 332 F. Supp. 382, 390–92 (N.D.Ga.1971), and cases there cited; aff'd., 457 F.2d 788 (5th Cir., 1972, No. 71–3466). The affirmative obligation to seek means of disestablishing state-imposed segregation must be shared by all agencies or agents of the state. Franklin v. Quitman County Board, 288 F.Supp. 509, 519 (N.D.Miss.1968).

B. Under the evidence in this case, taken together and viewed in their historical context, such failures of the City and the Council violate the rights of the plaintiffs and the class they represent under the equal protection clause of the Fourteenth Amendment to the United States Constitution. Crow v. Brown, *supra*, 332 F.Supp. at 392.

C. Under the evidence in this case, the effect of the operation of the foregoing provision of Section 9, Chapter 67½ Illinois Revised Statutes, has been and is to deny plaintiffs the relief to which they are entitled under the Judgment Order and to prevent this Court from assuring that a full remedy is provided for the violations of federal constitutional rights which this Court's memorandum opinion of February 10, 1969 found to have occurred.

D. Under the evidence in this case, the Court has the power and duty to take appropriate action to provide such remedy notwithstanding the foregoing provision of Section 9, Chapter 67½, Illinois Revised Statutes, and notwith-

standing such failures of the City and the Council. Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); Haney v. County Board of Education, 429 F.2d 364 (8th Cir. 1970); United States v. Greenwood School District, 406 F.2d 1086 (5th Cir. 1969); Bradley v. School Board, 324 F. Supp. 396 (E.D.Va.1971); United States v. Texas, 321 F.Supp. 1043 (E.D.Tex. 1970); Burleson v. County Board, 308 F.Supp. 352 (E.D.Ark.1970); Crow v. Brown, *supra*; Kennedy Park Homes Ass'n v. City of Lackawanna, 318 F. Supp. 669 (W.D.N.Y.), aff'd., 436 F.2d 108 (2d Cir. 1970); Southern Alameda Spanish Speaking Organization v. City of Union City, 424 F.2d 291, 295–96 (9th Cir. 1970); Hawkins v. Town of Shaw, 437 F.2d 1286, 1291–92 (5th Cir. 1971).

For the foregoing reasons it is hereby ordered:

1. The motions to dismiss the supplemental complaint and for jury trials be and the same hereby are denied.

2. Until the further order of this Court the following provision of Section 9, Chapter 67½, Illinois Revised Statutes, to wit:

"If the area of operation of a housing authority includes a city, village or incorporated town having a population in excess of 500,000 as determined by the last preceding Federal census, no real property or interest in real property shall be acquired in such municipality by the housing authority until such time as the housing authority has advised the governing body of such municipality of the description of the real property, or interest therein, proposed to be acquired, and the governing body of the municipality has approved the acquisition thereof by the housing authority."

shall not be applicable to CHA's actions, including without limitation the acquisition of real property in the City of Chicago, taken for the purpose of providing Dwelling Units.

3A. Within 10 days from the date hereof the City shall file with the Court and serve upon Counsel for CHA, HUD and the plaintiffs the addresses of 106 sites referred to in plaintiff's Exhibit 8, the relevant page of which is attached hereto as Appendix 1.

3B. During the 20 days following such filing and service CHA shall receive, consider, and make available at its offices to the public for inspection, all comments from any source relating to such sites as are submitted to it in writing.

3C. Within 10 days following the end of such 20 day comment period CHA shall file with the Court, and serve upon HUD and counsel for the plaintiffs, a final list of such of the sites served upon it by the City under paragraph 3A hereof as in the judgment of CHA, taking into consideration both the comments received under paragraph 3B hereof and the need to effectuate the previous orders of this Court, are appropriate for the provision of Dwelling Units pursuant to such previous orders.

3D. Immediately upon such filing and service pursuant to paragraph 3C hereof, CHA shall begin all steps and procedures necessary or appropriate to acquire such sites and provide Dwelling Units thereon, including without limitation, (a) the preparation and submission of plans and proposals, including a so-called Development Plan, relating thereto to HUD, (b) the acquisition of such sites, regardless of any action taken or not taken by the Council with respect thereto, upon HUD's approval of such Development Plan, and (c) the provision of Dwelling Units thereon as promptly as may be.

4A. Within 15 days from the date hereof the City shall deliver to CHA a list of all the vacant, residentially zoned parcels of land in the General Public Housing Area of the City of which it has knowledge.

4B. Within 70 days from the date hereof CHA shall file with the Court and serve upon counsel for HUD, the

City and the plaintiffs, a list of such sites as will in the judgment of CHA, when added to the sites approved by the Council in June, 1971, and the sites referred to in paragraph 3C hereof, be sufficient for the provision of an aggregate of 1500 Dwelling Units in conformity with the Judgment Order.

4C. During the 30 days following such filing and service CHA shall receive, consider and make available at its offices to the public for inspection, all comments from any source relating to such sites as are submitted to it in writing.

4D. Within 20 days following the end of such 30 day comment period CHA shall file with the Court and serve upon HUD and counsel for the plaintiffs a final list of such of the sites referred to in paragraph 4B hereof as in the judgment of CHA, taking into consideration both the comments received under paragraph 4C hereof and the need to effectuate the previous orders of this Court, are appropriate for the provision of the aggregate of 1500 Dwelling Units referred to in paragraph 4B hereof.

4E. Immediately upon such filing and service pursuant to paragraph 4D hereof, CHA shall begin all steps and procedures necessary or appropriate to acquire such sites and provide Dwelling Units thereon, including without limitation, (a) the preparation and submission of plans and proposals, including a so-called Development Plan, relating thereto to HUD, (b) the acquisition of such sites, regardless of any action taken or not taken by the Council with respect thereto, upon HUD's approval of such Development Plan, and (c) the provision of Dwelling Units thereon as promptly as may be.

5. The Court retains jurisdiction over this matter for the entry of such further orders as may be appropriate to effectuate the provisions of this order or otherwise.

## CERTIFICATION UNDER RULE 54(b)

With respect to the foregoing order it is hereby certified in accordance with Rule 54(b) of the Federal Rules of Civil Procedure,

(a) That the Court has directed the entry of a final judgment respecting a claim for relief under the supplemental complaint; and

(b) That the Court has determined that there is no just reason for delay.

## APPENDIX 1

## STATUS REPORT

### ORIGINAL 275 CHA LOW–INCOME HOUSING SITES

In March of 1971 the Chicago Housing Authority submitted to the City Council a list of 275 sites (1,747 units) for low-income housing. The following table gives a breaddown of the action taken by the City Council relative to this list:

|  | Sites | Units |
|---|---|---|
| Original CHA Submission To City Council | 275 | 1,747 |
| Sites Heard By Planning And Housing Committee | 85 | 689 |
| Remainder To Be Heard By Planning And Housing Committee | 190 | 1,058 |
| Original Sites Approved By City Council | 50 | 345 |
| Original Sites Disapproved By City Council | 35 | 344 |
| Alternate Sites Approved By City Council | 50 | 387 |
| Total Sites Approved By City Council | 100 | 732 |

(Note: Attached is a map indicating the areas of the City for which hearings have been held.)█

A list of the 100 sites approved by the City Council was submitted to HUD for review. The following table gives a breakdown of the action taken by HUD as outlined in their letter to the Chicago Housing Authority dated August 11, 1971:

|  | Sites | Units |
|---|---|---|
| Sites Approved By HUD | 34 | 243 |
| Sites Not Approved | 5 | 35 |
| Sites Not Considered—In Limited Public Housing Area | 56 * | 430 |
| Sites Not Mentioned In HUD Letter | 5 | 24 |

* Of the 56 sites not considered by HUD, 12 sites (104 units) were in Spanish Speaking communities and 5 sites (33 units) were in the Lincoln Park Community.

(Note: Attached are maps and site lists for each sector of the City reviewed by HUD)†

Of the remaining 190 original CHA sites we have completed our review of 148 sites (791 units). The following table is a breakdown of our determination of the suitability of these sites for residential development:

|  | Sites | Units |
|---|---|---|
| Suitable Sites in the General Public Housing Area | 106 | 585 |
| Suitable Sites in the Limited Public Housing Area | 21 | 67 |
| Sites For Which No Determination Has Been Made | 3 | 30 |
| Sites Not Suitable | 18 | 109 |

(Note: Attached are maps, with the sites plotted, for the areas considered in the above table)†

We are now in the process of finalizing our review of the remaining 42 original CHA sites.