**CHICAGO HOUSING AUTHORITY,**
Petitioner,

v.

**The Honorable Richard B. AUSTIN, Judge of the United States District Court for the Northern District of Illinois, Respondent.**

No. 74–1926.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 19, 1974.

Decided Jan. 24, 1975.

Rehearing Denied Feb. 27, 1975.

Patrick W. O'Brien and Steven M. Rasher, Chicago, Ill., for petitioner.

Alexander Polikoff, Chicago, Ill., for respondent.

Before SWYGERT, Chief Judge, and FAIRCHILD and TONE, Circuit Judges.

FAIRCHILD, Circuit Judge.

This petition for writ of mandamus is another episode in the Gautreaux litigation concerning the location of public housing in the Chicago area.[1] Petitioner Chicago Housing Authority seeks mandamus to vacate an order of reference entered by Judge Austin November 7, 1974

---

1. See Gautreaux v. Chicago Housing Authority, 265 F.Supp. 582 (N.D.Ill.1967); Gautreaux v. Chicago Housing Authority, 296 F.Supp. 907 (N.D.Ill.1969); Gautreaux v. Chicago Housing Authority, 304 F.Supp. 736 (N.D.Ill. 1969); Gautreaux v. Chicago Housing Authority, 436 F.2d 306 (7th Cir. 1970), cert. denied, 402 U.S. 922, 91 S.Ct. 1378, 28 L.Ed.2d 661 (1971); Gautreaux v. Romney, 448 F.2d 731 (7th Cir. 1971); Gautreaux v. Romney, 332 F.Supp. 366 (N.D.Ill.1971), rev'd 457 F.2d 124 (7th Cir. 1972); Gautreaux v. Chicago Housing Authority, 342 F.Supp. 827 (N.D.Ill.1972), aff'd sub nom., Gautreaux v. City of Chicago, 480 F.2d 210 (7th Cir. 1973), cert. denied, 414 U.S. 1144, 94 S.Ct. 895, 39 L.Ed.2d 98 (1974); Gautreaux v. Romney, 363 F.Supp. 690 (N.D. Ill.1973), rev'd sub nom., Gautreaux v. Chicago Housing Authority, 503 F.2d 930 (7th Cir. 1974).

in Gautreaux v. Chicago Housing Authority et al., 384 F.Supp. 37 (N.D.Ill.). After a preface indicating lack of progress in supplying public housing in Chicago, the order provides, in part, as follows:

"The Master is directed to study and review segregation in Chicago public housing, to determine and identify the precise causes of the five-year delay in implementing my judgment orders, and to recommend a plan of action that will expedite the realization of my various orders and judgments. In so doing, the Master shall not be limited to determining whether HUD and CHA have employed their 'best efforts,' but shall examine all possibilities to expedite the mandate of this Court that the supply of dwelling units in Chicago shall be increased as rapidly as possible, including, without limitation, utiiization of new housing programs established by the Housing and Community Development Act of 1974."

Other provisions of the order dealt with procedure before the Master, and in the formulation of the Report.

On February 10, 1969, Judge Austin filed a memorandum opinion finding there had been discrimination on the basis of race in public housing site selection in Chicago. 296 F.Supp. 907. On July 1, 1969, judgment was entered ordering, among other things, that CHA use its best efforts to increase the supply of dwelling units in conformity with the judgment (304 F.Supp. 736, 741) and ultimately HUD was similarly enjoined.

On September 11, 1974 plaintiffs filed a motion for an order requiring CHA and its codefendant, HUD, to recommend how enforcement of the July, 1969 judgment order could be facilitated. This motion was apparently abandoned, and on September 30, plaintiffs filed a motion seeking the appointment of a commissioner to formulate plans for the expeditious construction of new public housing in the City of Chicago. While declining to appoint the requested com-missioner, Judge Austin made the order of reference.

CHA argues that mandamus should issue because Judge Austin's order of reference constituted an abdication of judicial decision making responsibility contrary to the teachings of La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, reh. denied, 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 560 (1957) and TPO, Incorporated v. McMillen, 460 F.2d 348 (7th Cir. 1972).

If we understand CHA's apprehension, it is that the Master might make findings on issues of fact which would be prejudicial to CHA and would become binding unless clearly erroneous. On the other hand, no such issues have been framed by pleadings or otherwise. It can well be argued that the proceeding before the Master is limited to preliminary inquiry and the result to recommendations as to steps the court itself might consider initiating.

The district court appears to be seeking assistance in exploration of possible alternative courses in a difficult area. The memorandum which was a preface to the order stated that "this matter must be referred to a Master for immediate attention and proposals." The order, in terms, does not require the Master to make findings of fact and conclusions of law (See Rule 53(e)(1), F.R. Civ.P.) and refers to the Master's draft report, to be discussed with the parties, as "a final draft of his recommendations and comments." The order says that the "final Report, as determined by the Master, shall be submitted to the Court for its review and possible use." In colloquy, Judge Austin said, "I think my order indicates I retained the ultimate responsibility."

A "party seeking mandamus has 'the burden of showing that its right to issuance of the writ is "clear and indisputable." ' " Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967). Mandamus "should be resorted to only where appeal is a clearly inadequate remedy." Ex parte Fahey, 332

U.S. 258, 260, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947).

As already indicated, it seems wholly unlikely that the reference under challenge here contemplated or will result in determinations by the Master which will bind and prejudice the rights of CHA. Should CHA ultimately conclude that it can demonstrate error and resulting prejudice, appeal will be an adequate remedy.

We do not decide the question of the propriety of the order of reference, but we do consider mandamus inappropriate in the circumstances.

The petition for writ of mandamus is denied. The stay of the reference, heretofore ordered, is vacated.

SWYGERT, Chief Judge (dissenting in part).

I cannot agree with the majority's view that the district judge's order seeks only a "preliminary inquiry" that will probably not result in prejudice to petitioner. I believe that both the district judge's comments at the hearing on this matter and the order itself indicate that the master has been authorized to render specific factual findings that could become the basis for a contempt citation.[1]

The order which is the subject of this mandamus petition is a part of protracted litigation concerning the location of public housing in the Chicago area. In 1969 a judgment order was entered which in part required that:

> CHA shall use its best efforts to increase the supply of Dwelling Units as rapidly as possible in conformity with the provisions of this judgment order and shall take all steps necessary to that end, including making applications for allocations of federal funds and carrying out all necessary planning and development.

In an effort to secure enforcement of this portion of the 1969 order, the plaintiffs, on September 30, 1974, filed a motion for the appointment of a commissioner that eventually resulted in the order before us.

Before formally entering the November 7, 1974 order (Appendix A), Judge Austin held a hearing on the question of entering such an order. Some of his comments at that hearing are instructive concerning his view of the scope of the master's responsibilities:

> What I am interested in now is whether or not HUD and CHA have used their best efforts. That is what I propose to have these hearings about, to see whether based on whatever is adduced at these hearings warrants a finding that they have used their best efforts, and if after reviewing that testimony, and whatever else is considered by the Master, I find that they have not, then we will start thinking about contempt citations for the Chairman of the Chicago Housing Authority and maybe contempt citations for HUD, but what I am interested in now is seeing whether, as the parties now contend, . . . .

> And all I am interested in, as far as these hearings are concerned, is to see whether or not the evidence warrants that they have engaged in their best efforts, and if it does, I think my hands are tied. If it does not, then my hands are not tied, and somebody had better bring their toothbrush.

Indeed, the order itself indicates that the issue of whether petitioner used its "best efforts" is to be considered by the master. One of the reasons for the referral to a master is stated to be "to pinpoint responsibility for defendants' apparent lack of diligence." At a later point the opinion states that "the Master shall not be limited to determining whether HUD and CHA have employed their 'best efforts.'"

These comments and the quoted portions of the order indicate to me that the master's duties are to encompass the

---

1. In this context it is important to note that Fed.R.Civ.P. 53(e)(2) provides: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. . . . "

submission of factual findings relating to whether CHA complied with the "best efforts" order. For two reasons the master should not be allowed to specifically investigate the factual underpinnings of a contempt petition. Plaintiffs have not suggested to the district court that CHA displayed any bad faith in its attempt to comply with the "best efforts" order and it is not the function of the district judge to initiate a consideration of that possibility on his own motion. As Arthur Murray, Inc. v. Oliver, 364 F.2d 28, 34 (8th Cir. 1966) states:

> And above this, from the very nature of the judicial role, it is not given to a judge to engage in a prospecting quest for other evidence possibility to add to a record, nor counterpartly to appoint a master to make such a discovery pursuit for him.

More importantly, the question of whether a party has violated a court order is surely a matter for judicial determination that cannot be delegated to a master. To allow a master to make even a preliminary inquiry into the question of a possible contempt citation is "an abdication of the judicial function" and violative of La Buy v. Howes Leather Co., 352 U.S. 249, 256, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957). Nor do I think that the prejudice to the petitioner inherent in having the "contempt" portion of these proceedings initially presented before a master rather than before an Article III judge is cured by the fact that here the report is to be submitted only for "review and possible use." In regard to issues bearing on contempt the petitioner is entitled to have the initial findings made by an Article III judge, not just a review. See, TPO, Inc. v. McMillen, 460 F.2d 348, 360, n.62 (7th Cir. 1972).

Finally, I cannot accept the conclusion that there is no need for mandamus since any possible prejudice can be remedied by a later appeal. The clear import of La Buy v. Howes Leather Co., *supra* and TPO, Inc. v. McMillen, *supra* is that mandamus is a proper remedy when there has been an improper reference to a master.

I would require that the following portions of the order of November 7 be vacated: the words "to pinpoint responsibility for defendant's apparent lack of diligence and" on lines 9–10 of the first page; and the words "shall not be limited to determining whether HUD and CHA have employed their 'best efforts', but" on lines 5–7 of the fourth page of the order.

## (APPENDIX A)

In The United States District Court
Northern District of Illinois
Eastern Division

Dorothy Gautreaux, et al.,

Plaintiffs,

v.

Chicago Housing Authority, James T. Lynn, Successor to George W. Romney, Secretary of Department of Housing and Urban Development, et al.,

Defendants.

---

Nos. 66 C 1459 & 66 C 1460
(Consolidated)

---

## MEMORANDUM OPINION AND REFERENCE ORDER

These consolidated cases come before me now on Plaintiffs' motion to appoint a Commissioner to formulate plans for the expeditious construction of new public housing units in the City of Chicago. Since it has not been established that Defendants Chicago Housing Authority (CHA) and United States Department of Housing and Urban Housing Development (HUD) have directly contravened my prior judgments and since Plaintiffs' request is overbroad, the motion cannot be granted as tendered. However, to pinpoint responsibility for Defendants' apparent lack of diligence and to develop methods for achieving compliance with my orders, reference of this case to a Master is appropriate. Fed.R.Civ.Pro. 53(a). See La Buy v. Howes Leather Co., 352 U.S. 249, 256, 77 S.Ct. 309, 1

L.Ed.2d 290 (1957); Schwimmer v. United States, 232 F.2d 855, 865 (8th Cir.), cert. den., 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).

The history and substance of these lawsuits are extensive and complicated. For an excellent background discussion of this controversy, *see* Gautreaux v. Romney, 457 F.2d 124, 129 et seq. (7th Cir. 1972) (Sprecher, J., *dissenting*). After carefully examining the legal contentions and factual proofs of the parties, I entered a *Memorandum Opinion* on February 10, 1969, holding that Defendant CHA intentionally and unconstitutionally discriminated, on the basis of race, in its public housing site selection and tenant assignment procedures in Chicago. Gautreaux v. Chicago Housing Authority, 296 F.Supp. 907 (N.D.Ill.1969). On September 10, 1971, a similar finding was made against Defendant HUD by the United States Court of Appeals for the Seventh Circuit. Gautreaux v. Romney, 448 F.2d 731 (7th Cir. 1971). Each Defendant was ordered to use its "best efforts" to reverse the effects of its prior unlawful conduct. Gautreaux v. Chicago Housing Authority, 304 F.Supp. 736 (N.D.Ill.1969), aff'd, 436 F.2d 306 (7th Cir. 1970); Gautreaux v. Romney, 363 F.Supp. 690 (N.D.Ill.1973), rev'd on other grounds, 503 F.2d 930 (7th Cir. 1974). To that end, on July 1, 1969, I enjoined the further construction of public housing in any "non-white" section of Chicago, unless such action was accompanied by the simultaneous construction of at least 75 percent of all proposed units in "white" areas of the City. Gautreaux v. Chicago Housing Authority, 304 F.Supp. 736 (N.D.Ill.1969), aff'd, 436 F.2d 306 (7th Cir. 1970).

For the past five years and four months, no public housing construction has been completed by any party. Both HUD and CHA contend that they have employed their "best efforts" to fulfill the mandate of my orders and attribute this inordinate delay to "normal bureaucratic procedures." For their part, Plaintiffs have refrained from charging Defendants with "bad faith" but maintain that additional Court assistance is necessary to bring these cases to a prompt and just conclusion. I agree. For reasons entirely unclear to me, the effect and import of my orders have been avoided and frustrated for over five years. During this period of time, the citizens of this City have been deprived of increased low-income housing. In light of these exceptional circumstances, in view of the unusually complex issues presented here, and in the interests of justice, I conclude that this matter must be referred to a Master for immediate attention and proposals. Fed. R.Civ.Pro. 53(a); 5A Moore's Federal Practice § 53.05.

## ORDER OF REFERENCE

Pursuant to the discretion vested in me by Fed.R.Civ.Pro. 53(a) and in exercise of my judicial authority, this matter is hereby referred to a United States Magistrate to serve as a Master. *See* 5A Moore's Federal Practice § 53.05. *See also* Ex parte Peterson, 253 U.S. 300, 312, 40 S.Ct. 543, 64 L.Ed. 919 (1920), cited with approval in *La Buy, supra*, 352 U.S. at 256, 77 S.Ct. 309. The Magistrate shall be selected according to the local rules.

The Master is directed to study and review the existing patterns of racial segregation in Chicago public housing, to determine and identify the precise causes of the five-year delay in implementing my judgment orders, and to recommend a plan of action that will expedite the realization of my various orders and judgments. In so doing, the Master shall not be limited to determining whether HUD and CHA have employed their "best efforts," but shall examine all possibilities to expedite the mandate of this Court that the supply of dwelling units in Chicago shall be increased as rapidly as possible, including, without limitation, utilization of new housing programs established by the Housing and Community Development Act of 1974.

Defendants shall render their complete cooperation to the Master. By way of example and not as a limitation, the Master shall have full access to maps,

drawings, reports, statistics, computer studies, and all other information which may be necessary to accomplish the purposes of this order. He shall be supplied with any studies, plans, and partial plans for desegregation of the public housing system which Defendants individually or collectively may possess.

Defendants shall provide the Master with whatever professional, technical, and other assistance he may require to familiarize himself with the Chicago public housing system and the problems to be resolved in effectuating my orders and judgments and to otherwise comply with his delegated responsibilities. The full cooperation of Defendants' staffs is requested and will be appreciated.

At such time as the Master shall complete a final draft of his recommendations and comments, he shall furnish copies of the same to the parties. The Master shall then meet in executive session with the Secretary of HUD or his designees, the Board of CHA or their designees, and Plaintiffs' counsel or their designees, and review the same and discuss any suggested revisions. After such session or sessions, the final Report, as determined by the Master, shall be submitted to the Court for its review and possible use. Until the Master's Report is presented to the Court, it shall be deemed to constitute "work papers." All such work papers, and the contents thereof, shall be confidential; such papers shall not be disclosed to others, except as the Court may direct and except that the Master, with the Court's approval, may employ, and consult with, such persons as he deems necessary for the performance of his prescribed duties, including particularly persons not affiliated with any of the parties, who possess specialized knowledge concerning federall-subsidized (sic) housing programs.

The Court retains jurisdiction over these cases for the entry of such further orders as may be appropriate.

Plaintiffs' motion to appoint a Commissioner granted as modified herein. Matter referred to a Master, according to the rules.

Dated: November 7, 1974.