Dorothy GAUTREAUX, Odell Jones, Doreatha R. Crenchaw, Eva Rodgers, James Rodgers, Robert M. Fairfax and Jimmie Jones, Plaintiffs,

v.

The CHICAGO HOUSING AUTHORITY, a corporation, and C. E. Humphrey, Executive Director, Defendants.

Civ. A. No. 66 C 1459.

United States District Court
N. D. Illinois, E. D.

July 1, 1969.

Alexander Polikoff, Charles R. Markels and Bernard Weisberg, Chicago, Ill., for plaintiffs.

Kathryn M. Kula, John W. Hunt, and James T. Otis, Chicago, Ill., for defendants.

## JUDGMENT ORDER

AUSTIN, District Judge.

This matter coming on to be heard pursuant to this Court's Memorandum Opinion of February 10, 1969, D.C., 296 F.Supp. 907, and Orders entered on such date denying defendants' motions for summary judgment, denying plaintiffs' motion for summary judgment as to Count II of the Complaint, and granting plaintiffs' motion for summary judgment as to Count I of the Complaint, and

The Court having conferred with counsel for the parties and having determined that the several provisions of this judgment order are necessary to prohibit the future use and to remedy the past effects of the defendant Chicago Housing Authority's unconstitutional site selection and tenant assignment procedures, to the end that plaintiffs and the class of persons represented by them, Negro tenants of and applicants for public housing in Chicago, shall have the full equitable relief to which they are entitled,

It is hereby ordered:

I. For purposes of this judgment order,

A. "CHA" shall mean the defendant, Chicago Housing Authority.

B. "Dwelling Unit" shall mean an apartment or single family residence which is to be initially made available to and occupied by a low-income, non-elderly family, subsequent to the date hereof, directly or indirectly by or through CHA, whether in a structure owned in whole or in part by CHA (whether or not newly constructed) or to be otherwise made available for occupancy by or through CHA to such a family. "Dwelling Units" include "Leased Dwelling Units" as hereinafter defined.

C. "Leased Dwelling Unit" shall mean a Dwelling Unit in a structure leased or partially leased by CHA from any person, firm or corporation.

D. "Limited Public Housing Area" shall mean that part of the County of Cook in the State of Illinois which lies either within census tracts of the United States Bureau of the Census having 30% or more non-white population, or within a distance of one mile from any point on the outer perimeter of any such census tract. "General Public Housing Area" shall mean the remaining part of the County of Cook in the State of Illinois. The terms "non-white" and "white" shall have the meaning given to such terms by the United States Bureau of the Census.

For purposes of this subsection D, results of the 1970 and each subsequent census taken by the United States Bureau of the Census shall presumptively determine the non-white population of census tracts until results of a subsequent such census are officially published; provided, that any party may, on motion, offer evidence as to the non-white population of any census tract for the purpose of rebutting such presumption; and provided further, that Dwelling Units located or proposed to be located in any census tract subsequent to official publication of the results of the last previous such census shall be taken into account in determining the population of such census tract, and for such purpose it shall be assumed that such Dwelling Units will be occupied by non-whites at the rate of two persons per bedroom.

For the period from the date hereof until the official publication of such 1970 census results, the census tracts in the City of Chicago listed on Ex-

hibit A, attached hereto, shall be presumed to have 30% or more non-white population; and, subject to evidence offered on motion by either party, the non-white population of census tracts in the County of Cook outside of the City of Chicago shall be presumed to be as stated in the 1960 census of the United States Bureau of the Census.

E. "Public Housing Project" shall mean any thirteen or more Dwelling Units which are located (1) in the same structure, (2) on the same lot or parcel of real estate, or (3) on two or more lots or parcels of real estate which are contiguous to one another, or are separated only by streets, alleys, bodies of water, railroad tracks or the like.

II. Following the date of this judgment order CHA shall not authorize, approve or implement any plan for Dwelling Units, nor shall CHA seek any approval or request or accept any assistance from any government agency with respect thereto (including without limitation approval of the acquisition of any interest in real estate), unless such plan affirmatively requires that,

A. All Dwelling Units provided for in such plan shall be located in conformity with the provisions of Article III hereof, and

B. The activities to be performed in order to render such Dwelling Units available for occupancy (whether construction, purchase, rehabilitation, leasing or otherwise) shall take place at such times as will result in the location of such Dwelling Units in conformity with the provisions of Article III hereof.

III. Following the date of this judgment order CHA shall provide Dwelling Units as follows, and not otherwise:

A. The following Dwelling Units may be made available for occupancy without restriction imposed by this order:

(1) The 1458 Dwelling Units provided for by pending CHA projects Ill. 2–27, 2–28 (exclusive of Dwelling Units proposed to be located at 70th and Harper streets in the City of Chicago), 2–32, 2–33, 2–51, 2–64, 2–69 and 2–74.

(2) Leased Dwelling Units (but not more than two per structure) which have been occupied for at least six months prior to CHA's leasing the same by tenants who continue in occupancy following CHA's leasing thereof.

B. CHA shall not commence or cause to be commenced the construction of any Dwelling Units, other than said 1458 Dwelling Units referred to in Subsection A of this Article III, until CHA shall have commenced or caused to be commenced, and shall be continuing or shall have completed, the construction of not less than 700 Dwelling Units located in the General Public Housing Area of the City of Chicago.

C. Subject to the provisions of Subshall not commence or cause to be commenced the construction of any Dwelling Units in any Limited Public Housing Area, other than said 1458 Dwelling Units referred to in Subsection A of this Article III, unless within three months following such commencement of construction at least 75% of the Dwelling Units on which CHA shall have commenced or caused to have commenced construction, and shall have continued or completed construction, since the commencement of construction of the last of the 700 Dwelling Units referred to in subsection B of this Article III shall have been located (at the time of commencement of construction thereof) in the General Public Housing Area of the City of Chicago.

D. Subject to the provisions of subsection E of this Article III, no Leased Dwelling Unit shall be made available for occupancy in the Limited Public Housing Area of the City of Chicago (in addition to Leased Dwelling Units in such Area which are already occupied) unless, immediately following such occupancy, at least 75% of the Leased Dwelling Units then oc-

cupied are located in the General Public Housing Area of the City of Chicago; provided, that such number of Leased Dwelling Units located in the General Public Housing Area of the City of Chicago may be less than such 75% to the extent Dwelling Units other than Leased Dwelling Units have been occupied, or are under construction which is continuing, in the General Public Housing Area of the City of Chicago in excess of the 75% minimum requirement of subsection C of Article III hereof.

E. Not more than $33\frac{1}{3}\%$ of the Dwelling Units required by subsection C of this Article III to be located in the General Public Housing Area of the City of Chicago, and not more than $33\frac{1}{3}\%$ of the Leased Dwelling Units required by subsection D of this Article III to be located in the General Public Housing Area of the City of Chicago, may at the option of CHA, be planned for and located in the General Public Housing Area of the County of Cook in the State of Illinois, outside of the City of Chicago, provided that (whether or not constructed by CHA) the same are made available for occupancy by CHA to, and are occupied by, residents of the City of Chicago who have applied for housing to CHA, and provided further that all such Dwelling Units comply with the provisions of Article IV of this order.

IV. Following the date of this judgment order CHA shall not concentrate large numbers of Dwelling Units in or near a single location. Without limiting the foregoing, unless part of a development specifically designed to assist in achieving the purposes hereof as to which the Court by order shall have given its approval,

A. No Public Housing Project shall contain Dwelling Units designed for occupancy by more than 120 persons, except that if it is impossible for CHA to provide within such limitation Dwelling Units which it is otherwise capable of providing, and if it will assist in achieving the purposes of this judgment order, a Public Housing Project may contain Dwelling Units designed for occupancy by not more than 240 persons.

B. No Dwelling Units shall be located in any census tract if, following such location, the aggregate number of apartments and single family residences theretofore made available to low-income, non-elderly families, directly or indirectly by or through CHA, in such census tract would constitute more than 15% of the total number of apartments and single family residences in such census tract; and

C. No Dwelling Units shall be provided above the third story in any structure except for families without children and except Leased Dwelling Units in a structure in which the number of Dwelling Units aggregates no more than 20% of the total number of apartments in such structure.

V. Within 30 days following the date of this judgment order CHA shall file with the Court and serve upon counsel for the plaintiffs evidence that CHA has modified its tenant assignment policy, adopted by CHA Board Resolution No. 68–CHA–232, a copy of which is attached hereto as Exhibit B, and its practices thereunder, to include all Leased Dwelling Units as a single "location" for the purposes thereof. Such policy and practices, as so modified, shall be applicable until the further order of this Court.

VI. Within 60 days following the date of this judgment order CHA shall file with the Court and serve upon counsel for the plaintiffs a tenant assignment plan. Such plan shall include, but need not be limited to, provisions having the following purpose and effect:

A. Such modifications, if any, shall be made in CHA's tenant assignment policy and practices as will assist in achieving the purposes of this judgment order.

B. New registrations on CHA's list of persons desiring housing (the "waiting list") shall be temporarily ended; a determination shall be made promptly as to which registrants remain eligible for and still desire public housing; intensive publicity shall then be employed in such manner as effectively to inform low-income families throughout the City of Chicago, including present CHA tenants, that substantial numbers of Dwelling Units will be made available in the General Public Housing Area of the City of Chicago pursuant to the provisions of this judgment order; and thereafter the "waiting list" shall be reopened to new registrants, including present CHA tenants who wish to apply for Dwelling Units in the General Public Housing Area.

C. Not more than 50% of the Dwelling Units in all Public Housing Projects shall be made available to eligible neighborhood residents, the remaining Dwelling Units to be made available for occupancy in accordance with subsection A of this Article VI.

D. Vacancies in CHA's Trumbull, Lathrop, Lawndale, and Bridgeport projects shall be filled in accordance with subsection A of this Article VI, except that such tenant assignment plan may contain provisions designed to assure that such projects do not become racially segregated.

E. Suitably detailed information shall be regularly filed with the Court and served upon counsel for the plaintiffs showing CHA's compliance with the provisions of this Article VI and such tenant assignment plan.

Following the filing and service of such tenant assignment plan the Court will enter such further order as it deems appropriate.

VII. Following the date of this judgment order CHA shall file with the Court and serve upon counsel for the plaintiffs, the Civil Rights Division of the United States Department of Justice, and the Regional Administrator of the Department of Housing and Urban Development, the following:

A. A statement of the following information respecting each location for one or more Dwelling Units, such statement to be filed and served not more than 10 days after any such location is approved by the Board of Commissioners of CHA (or by the appropriate CHA officer or employee with respect to any location not required to be approved by the Board of Commissioners) and prior to the formal submission thereof to any other government agency or official for consideration or action:

(1) a map showing boundaries, placement in relation to adjacent streets and, where available street address;

(2) the area location (whether within the Limited or General Public Housing Area);

(3) the census tract number;

(4) the white and non-white population of such census tract;

(5) the aggregate number of apartments and single family residences theretofore made available to low-income, non-elderly families, directly or indirectly by or through CHA in such census tract;

(6) the aggregate number of apartments and single family residences in such census tract as reflected by the most recent census taken by the United States Bureau of the Census, supplemented by such information with respect thereto as is available to CHA from any other government agency or official (but the statement need not include such number if the number supplied with respect to the preceding paragraph (5) is zero);

(7) the total number of Dwelling Units proposed to be provided at such location;

(8) the number of structures, and the number of Dwelling Units in each, in which such Dwelling Units are proposed to be provided; and (9) such additional data as will show that such proposed Dwelling Units will be made available for occupancy in conformity with the provisions of Articles III and IV hereof, including without limitation, in the event such proposed Dwelling Units would result in a Public Housing Project designed for occupancy by more than 120 persons, information showing that the provisions of subsection A of Article IV hereof have been met with respect to such Public Housing Project.

B. Statements setting forth any change in the information included under paragraphs (1), (2), (3), (5), (7), (8) or (9) in a statement filed and served pursuant to subsection A of this Article VII, and covering the period up to initial occupancy of all Dwelling Units at any location, such statements to be filed and served not more than 10 days after any such change occurs.

C. Statements covering the periods from the date hereof until December 31, 1969, and from the date hereof until the end of each calendar semiannual period thereafter, containing such data as will show that (1) all plans for Dwelling Units during the period covered by such statements have been in conformity with the provisions of Article II hereof, and (2) all Dwelling Units provided during the period covered by such statements have been in conformity with the provisions of Article III and IV hereof, such statements to be filed and served not more than twenty days after the end of each calendar semi-annual period beginning with such period ended December 31, 1969.

VIII. CHA shall affirmatively administer its public housing system in every respect (whether or not covered by specific provision of this judgment order) to the end of disestablishing the segregated public housing system which has resulted from CHA's unconstitutional site selection and tenant assignment procedures. Without limiting the foregoing,

A. CHA shall use its best efforts to increase the supply of Dwelling Units as rapidly as possible in conformity with the provisions of this judgment order and shall take all steps necessary to that end, including making applications for allocations of federal funds and carrying out all necessary planning and development; and

B. CHA is hereby permanently enjoined from invidious discrimination on the basis of race in the conduct or operation of its public housing system, including without limitation the "pre-clearance procedure" described in the Court's Memorandum Opinion of February 10, 1969.

IX. This order shall be binding upon CHA, its officers, agents, servants, employees, attorneys, and their successors, and upon those persons, including the members of the City Council of the City of Chicago, in active concert or participation with them who receive actual notice of this order by personal service or otherwise.

X. This Court retains jurisdiction of this matter for all purposes, including enforcement and the issuance, upon proper notice and motion, of orders modifying or supplementing the terms of this order upon the presentation of relevant information with respect to proposed developments designed by CHA alone or in combination with other private or public agencies to achieve results consistent with this order, material changes in conditions existing at the time of this order. or any other matter.

XI. The costs of this action shall be taxed against CHA, subject to the further order of this Court.

## EXHIBIT A.

### CENSUS TRACT NUMBERS

| | | |
|---|---|---|
| 114 through 116 | 460 through 467 | 664 |
| 120 through 137 | 468 | 666 through 667 |
| 280 through 282 | 469–Z | 675 through 678 |
| 340 through 347 | 470 | 681–Z through 683–Z |
| 348–Z | 487 | 685 through 686 |
| 349–Z | 519–Z | 687–Z |
| 350 through 352 | 520 through 521 | 688 |
| 353–Z | 524 | 690 through 691 |
| 354 through 355 | 527–Z | 695 |
| 357 through 362 | 532–Z | 697 |
| 363–Z | 534–Z | 711 |
| 364 through 373 | 539–Z | 717–Z |
| 375–Z through 378–Z | 541 through 553 | 719–Z |
| 379 through 383 | 554–Z | 720–Z |
| 384–Z | 556 through 562 | 723 |
| 389–Z | 564–Z | 803 through 805 |
| 390–Z | 567–Z | 852 |
| 391 through 392 | 569–Z | 855 |
| 395 | 574 through 610 | 858 through 859 |
| 399–Z | 613–Z | 861 through 862 |
| 401–Z | 614 through 619 | 867–Z |
| 403 | 620–Z | 868 through 895 |
| 410–Z | 621–Z | 897–Z |
| 412 through 420 | 623 through 641 | 898 through 900 |
| 428 through 429 | 642–A | 903 |
| 431–Z | 642–B | 905 through 911 |
| 432 | 643 through 650 | 912–A through 912–D |
| 434–Z | 652 | 922 |
| 440 through 441 | 653–Z | 923–A |
| 442–Z | 655 | 923–B |
| 444 through 449 | 656–Z | 924 through 927 |
| 450–A | 657 | 932 |
| 450–B | 658–Z | 934 through 935 |
| 451 through 457 | 659 through 662 | |

## EXHIBIT B.

### TENANT SELECTION AND ASSIGNMENT PLAN

Each applicant shall be assigned his appropriate place on a community wide basis in sequence based upon date and time his application is received, suitable type or size of unit, and factors affecting preference or priority established by the Local Authority's regulations. At a given time, the applicant first on the waiting list shall be offered a dwelling unit in accordance with the following plan:

1. If at the time the applicant comes to the top of the waiting list there are suitable vacancies in three or more locations, the applicant shall be offered the unit at the location that contains the

largest number of vacancies. If the applicant rejects the first vacancy offered he shall be offered a suitable unit at the location containing the next highest number of vacancies. If the applicant rejects the second vacancy offered he shall be offered a suitable unit at the location containing the next highest number of vacancies. If the applicant rejects the third vacancy offered he shall be moved to last place on the eligible applicant list. When an offer of a suitable vacancy is made to an applicant, there must be a rejection of such offer before the applicant will be offered another location. Thus, the offering of a unit at the location with the second largest number of suitable vacancies will not be made until the applicant has first rejected the unit offered at the location with the largest number of vacancies. The offering of a unit at the location with the third largest number of suitable vacancies will not be made until the applicant has rejected the unit offered at the location with the second largest number of suitable vacancies.

2. If at the time the applicant comes to the top of the waiting list there are suitable vacancies in only two locations, the applicant shall be offered the unit at the location that contains the largest number of vacancies. If the applicant rejects the first vacancy offered he shall be offered a suitable unit at the second location. If the applicant rejects the second vacancy offered he shall be moved to last place on the eligible applicant list. When offers of suitable vacancies are made to applicants, there must be a rejection of the first offer before the applicant will be offered the second suitable vacancy.

3. If at the time the applicant comes to the top of the waiting list there is only one location at which a suitable vacancy exists, the applicant will be offered a unit at that location. If the applicant rejects the unit offered, he shall remain at the top of the waiting list until a second offer of a suitable vacancy can be made. Should the applicant reject the second offer of a suitable vacancy he shall be moved to last place on the eligible applicant list.

In carrying out the above plan, should the applicant be willing to accept the unit offered but be unable to move at the time of the offer and presents clear evidence of his inability to move to the Local Authority's satisfaction, refusal of the offer shall not count as one of the number of allowable refusals permitted the applicant before placing his name at the bottom of the eligible applicant list.

In carrying out the above plan, should the applicant present to the satisfaction of the Local Authority clear evidence that acceptance of a given offer of a suitable vacancy will result in undue hardship or handicap not related to considerations of race, color, or national origin, such as inaccessibility to source of employment, children's day care and the like, refusal of such an offer shall not be counted as one of the number of allowable refusals permitted an applicant before placing his name at the bottom of the eligible list.