**NUCLEUS OF CHICAGO HOMEOWN-
ERS ASSOCIATION et al.,
Plaintiffs,**

v.

**James T. LYNN, Secretary of the United
States Department of Housing and
Urban Development, et al., Defendants.**

**No. 72 C 1197.**

United States District Court,
N. D. Illinois, E. D.

Nov. 21, 1973.

**148**

Joseph V. Karaganis and Lawrence G. Martin, Martin & Karaganis, Chicago, Ill., for plaintiffs.

James R. Thompson, U. S. Atty., and Michael H. Berman and James C. Murray, Jr., Asst. U. S. Attys., Chicago, Ill., for James T. Lynn and U. S. Dept. of Housing and Urban Development, defendants.

Patrick W. O'Brien, Watson B. Tucker and John Bleveans, Mayer, Brown & Platt, Chicago, Ill., for Chicago Housing Authority, Charles R. Swibel, Theophilus M. Mann, John J. Masse, Letitia Nevill, Nicholas J. Bosen and C. E. Humphrey, defendants.

## MEMORANDUM OF DECISION

JULIUS J. HOFFMAN, Senior District Judge.

This suit arises out of court ordered construction of federally financed housing in Chicago.[1] The plaintiffs are a coalition of local community organizations and individuals within the city of Chicago which have incorporated into the Nucleus of Chicago Homeowners Association. The defendants are the Department of Housing and Urban Development, its Secretary, the Chicago Housing Authority, its Commissioners and Executive Director. The plaintiffs assert that the defendants, by failing to file an environmental impact statement in connection with possible environmental effects of the proposed housing projects, have violated the National Environmental Policy Act of 1969, Title 42, United States Code, Section 4332. The plaintiffs maintain that the proposed construction of public housing will significantly affect the environment, and consequently, the defendants are required to file an environmental impact statement under Section 102(2)(C) of the National Environmental Policy Act. The defendants contend that the construction of the housing will not significantly affect the environment.

The question to be decided by this court is whether the proposed building of the housing units would significantly affect the environment so as to require the defendants to file an environmental impact statement under the provisions of the National Environmental Policy Act.

The factual issues concern the social characteristics of the tenants of public housing as compared with the social characteristics of the plaintiffs, and the alleged adverse impact of those characteristics upon the environment. The plaintiffs assert that the social characteristics of the prospective tenants of the housing units will have an adverse impact on the quality of the environment and seek to enjoin the acquisition of housing sites pending the filing of an environmental impact statement. In support of this position, the plaintiffs allege that they are members of the "middle class and/or working class" which emphasizes obedience and respect

---

1. See Gautreaux v. Chicago Housing Authority, 304 F.Supp. 736 (N.D.Ill.1969) and Gautreaux v. Romney, 448 F.2d 731 (7th Cir. 1971). In accordance with the court orders, the Chicago Housing Authority submitted development programs which were to be funded by the Department of Housing and Urban Development.

for lawful authority, has a much lower propensity toward criminal behavior and acts of physical violence, and possesses a high regard for the physical and aesthetic improvement of real and personal property. The plaintiffs further allege that, as a "statistical whole," tenants of public housing possess a higher propensity toward criminal behavior and acts of physical violence, a disregard for the physical and aesthetic maintenance of real and personal property, and a lower commitment to hard work. Therefore, so the plaintiffs insist, the construction of public housing will increase the hazards of criminal acts, physical violence, and aesthetic and economic decline in the immediate vicinity of the sites. The plaintiffs maintain that these factors will have a direct adverse impact upon the physical safety of the plaintiffs residing in close proximity to the sites, together with a direct adverse impact upon the aesthetic and economic quality of their lives.

Cases construing the National Environmental Policy Act, with respect to the requirement of an impact statement, have concerned the environmental impact of a project by its very nature; for example, the building of a highway necessarily results in destruction of natural resources, increased auto emissions, and noise. There is no case involving the impact of a certain class of persons and of their social characteristics upon the environment. This is a case of first impression on that question.

■ Before a federal agency may take action on a proposal "significantly affecting the quality of the human environment," it must prepare a statement outlining the "environmental impact of the proposed action," Title 42, United States Code, Section 4332(2)(C). Pursuant to Presidential Executive Order 11514, 35 Fed.Reg. 4247 (1970), the Council on Environmental Quality promulgated guidelines, setting forth circumstances under which the National

Environmental Policy Act applies.[2] The guidelines clearly state that the Act applies to projects "supported in whole or in part through Federal contracts, grants, subsidies, loans, or other forms of funding assistance." Guidelines, § 5(a)(ii). The provisions of the National Environmental Policy Act clearly apply to this case, there being federal funding of municipal housing.

■ The defendants contend that they met their responsibilities under the Act by issuing a "negative impact statement" declaring that the proposed housing would not significantly affect the environment and therefore did not file a detailed environmental impact statement. The decision of the defendants having been made in good faith, their judgment will not be disturbed absent a clear showing that an impact statement was required by the facts. See Calvert Cliffs' Coordinating Committee v. Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1115 (1971).

■ At the outset, it must be noted that although human beings may be polluters (i. e., may create pollution), they are not themselves pollution (i. e., constitute pollution). Environmental impact in the meaning of the Act cannot be reasonably construed to include a class of persons per se. The provisions of the Act concern actions which harm or affect the environment. Therefore, the social and economic characteristics of the potential occupants of public housing as such are not decisive in determining whether an impact statement is required under the Act. The relevant consideration is whether acts or actions resulting from the social and economic characteristics will affect the environment.

■ The evidence presented by the plaintiffs in support of the position that actions of the tenants of public housing would significantly affect the environment was substantially expert testimony

2. Council on Environmental Quality, "Statements on Proposed Federal Actions

Affecting the Environment, Guidelines," 36 Fed.Reg. 7724 (1971).

by two social scientists. Their expert opinions were based on data extracted from census reports and statistics on existing public housing tenants. The experts testified that tenants of public housing included a high proportion of unemployment, a high proportion of welfare recipients, and a high proportion of "multi-problem" families. The expert testimony asserted that such tenants are likely to engage in anti-social acts of personal violence and property destruction. The expert testimony further asserted that the plaintiffs have a lesser potential for anti-social conduct than the tenants of public housing. The plaintiffs' case rests primarily upon this expert testimony on the probable behavior of tenants of public housing as contrasted with the probable behavior of the plaintiffs.

The defendants opposed the plaintiffs' expert witnesses with experts of their own selection. The defendants' witnesses contend that the decision that the proposed housing would not have a significant impact on the environment, by its nature or by the actions of its prospective tenants, was not arbitrary, capricious, or unreasonable.

Prognosticating human behavior and analyzing its consequences on the environment is an especially difficult, if not impossible, task. See Cross v. Harris, 135 U.S.App.D.C. 259, 418 F.2d 1095, 1107 (1969). Sociology, a discipline attempting such prediction, has not yet attained the stage of an exact science. By its very nature, it relies upon general conclusions drawn from average propositions based on sample data. The different expert conclusions that may be drawn from the same data is evident not only in the evidence before this court, but in the literature of the social sciences. As such, these conclusions are not very persuasive in a court of law.

Predictions of behavior of prospective tenants, whose identity is not yet known, made by the expert witnesses in this case, and the data upon which these predictions are based, are uncertain and un-

convincing. The conclusions of the expert witnesses are difficult, if not impossible, to verify and substantiate. The prospective tenants of public housing are individuals, and their behavior may not be presumed to be identical, or even similar, to other individuals in the same social or economic class. The law regards them as free, legally responsible individuals, not as sociological factors in deterministic formulae. The sociological predictions of prospective tenant behavior made by the plaintiffs' expert witnesses and based on statistical averages are not persuasive. "It is doubtful whether psychological and sociological effects upon neighbors constitute the type of factors that may be considered in making such a determination since they do not lend themselves to measurement." Hanly v. Kleindienst, 471 F.2d 823, 833 (2d Cir. 1972).

It is the court's conclusion that the evidence does not support the proposition that prospective tenants of public housing will significantly affect the environment. The evidence does not support the allegation in the complaint of differing socio-economic characteristics of the plaintiffs as contrasted with prospective tenants of public housing. There is no evidence to support the plaintiffs' allegations that prospective tenants of public housing are more likely to engage in anti-social conduct than present community residents. Indeed, there is little, if any, evidence of the social characteristics of the individual plaintiffs, none having testified. Thus the proposed construction of the housing units will not significantly affect the environment and the defendants' action in filing a negative impact statement was not in violation of the National Environmental Policy Act.

Accordingly, this court finds in favor of the defendants and against the plaintiffs. Judgment will be entered on the findings and the case is dismissed on the merits with costs. The foregoing memorandum of decision constitutes the court's findings of fact and conclusions of law.