Alexander Polikoff, Chicago, Ill., for plaintiffs.

Patrick W. O'Brien, and Steven M. Rasher, Chicago, Ill., for defendant Chicago Housing Authority.

James R. Thompson, U. S. Atty., R. Schaefer and R. A. Filpi, Asst. U. S. Attys., Chicago, Ill., for defendant James T. Lynn.

Dorothy GAUTREAUX et al.,
Plaintiffs,

v.

CHICAGO HOUSING AUTHORITY and James T. Lynn, Successor to George W. Romney, Secretary of the Department of Housing and Urban Development, et al., Defendants.

Nos. 66 C 1459, 66 C 1460.

United States District Court,
N. D. Illinois, E. D.

Nov. 7, 1974.

MEMORANDUM OPINION and
REFERENCE ORDER

AUSTIN, District Judge.

These consolidated cases come before me now on Plaintiffs' motion to appoint a Commissioner to formulate plans for the expeditious construction of new public housing units in the City of Chicago. Since it has not been established that Defendants Chicago Housing Authority (CHA) and United States Department of Housing and Urban Development (HUD) have directly contravened my prior judgments and since Plaintiffs' request is overbroad, the motion cannot be granted as tendered. However, to pinpoint responsibility for Defendants' apparent lack of diligence and to develop methods for achieving compliance with my orders, reference of this case to a Master is appropriate.

**38**

Fed.R.Civ.Pro. 53(a). *See* LaBuy v. Howes Leather Co., 352 U.S. 249, 256, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Schwimmer v. United States, 232 F.2d 855, 865 (8th Cir.), cert. den. 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).

The history and substance of these lawsuits are extensive and complicated. For an excellent background discussion of this controversy, *see* Gautreaux v. Romney, 457 F.2d 124, 129 et seq. (7th Cir. 1971) (Sprecher, J., dissenting). After carefully examining the legal contentions and factual proofs of the parties, I entered a *Memorandum Opinion* on February 10, 1969, holding that Defendant CHA intentionally and unconstitutionally discriminated, on the basis of race, in its public housing site selection and tenant assignment procedures in Chicago. Gautreaux v. Chicago Housing Authority, 296 F.Supp. 907 (N.D.Ill. 1969). On September 10, 1971, a similar finding was made against Defendant HUD by the United States Court of Appeals for the Seventh Circuit. Gautreaux v. Romney, 448 F.2d 731 (7th Cir. 1971). Each Defendant was ordered to use its "best efforts" to reverse the effects of its prior unlawful conduct. Gautreaux v. Chicago Housing Authority, 304 F.Supp. 736 (N.D.Ill.1969) aff'd 436 F.2d 306 (7th Cir. 1971); Gautreaux v. Romney, 363 F.Supp. 690 (N.D.Ill. 1973), rev'd on other grounds, 503 F.2d 930 (7th Cir., 1974). To that end, on July 1, 1969, I enjoined the further construction of public housing in any "non-white" section of Chicago, unless such action was accompanied by the simultaneous construction of at least 75 percent of all proposed units in "white" areas of the City. Gautreaux v. Chicago Housing Authority, 304 F.Supp. 736 (N.D.Ill.1969), aff'd 436 F.2d 306 (7th Cir. 1971).

For the past five years and four months, no public housing construction has been completed by any party. Both HUD and CHA contend that they have employed their "best efforts" to fulfill the mandate of my orders and attribute this inordinate delay to "normal bureau-cratic procedures." For their part, Plaintiffs have refrained from charging Defendants with "bad faith" but maintain that additional Court assistance is necessary to bring these cases to a prompt and just conclusion. I agree. For reasons entirely unclear to me, the effect and import of my orders have been avoided and frustrated for over five years. During this period of time, the citizens of this City have been deprived of increased low-income housing. In light of these exceptional circumstances, in view of the unusually complex issues presented here, and in the interests of justice, I conclude that this matter must be referred to a Master for immediate attention and proposals. Fed.R.Civ.Pro. 53(a); 5A Moore's Federal Practice § 53.05.

## ORDER OF REFERENCE

Pursuant to the discretion vested in me by Fed.R.Civ.Pro. 53(a) and in exercise of my judicial authority, this matter is hereby referred to a United States Magistrate to serve as a Master. See 5A Moore's Federal Practice § 53.05. *See also* Ex Parte Peterson, 253 U.S. 300, 312, 40 S.Ct. 543, 64 L.Ed. 919 (1920), cited with approval in *LaBuy, supra,* 352 U.S. at 256, 77 S.Ct. 309. The Magistrate shall be selected according to the local rules.

The Master is directed to study and review the existing patterns of racial segregation in Chicago public housing, to determine and identify the precise causes of the five-year delay in implementing my judgment orders, and to recommend a plan of action that will expedite the realization of my various orders and judgments. In so doing, the Master shall not be limited to determining whether HUD and CHA have employed their "best efforts", but shall examine all possibilities to expedite the mandate of this Court that the supply of dwelling units in Chicago be increased as rapidly as possible, including, without limitation, utilization of new housing programs established by the Housing

and Community Development Act of 1974.

Defendants shall render their complete cooperation to the Master. By way of example and not as a limitation, the Master shall have full access to maps, drawings, reports, statistics, computer studies, and all other information which may be necessary to accomplish the purposes of this order. He shall be supplied with any studies, plans, and partial plans for desegregation of the public housing system which Defendants individually or collectively may possess.

Defendants shall provide the Master with whatever professional, technical, and other assistance he may require to familiarize himself with the Chicago public housing system and the problems to be resolved in effectuating my orders and judgments and to otherwise comply with his delegated responsibilities. The full cooperation of Defendants' staffs is requested and will be appreciated.

At such time as the Master shall complete a final draft of his recommendations and comments, he shall furnish copies of the same to the parties. The Master shall then meet in executive session with the Secretary of HUD or his designees, the Board of CHA or their designees, and Plaintiffs' counsel or their designees, and review the same and discuss any suggested revisions. After such session or sessions, the final Report, as determined by the Master, shall be submitted to the Court for its review and possible use. Until the Master's Report is presented to the Court, it shall be deemed to constitute "work papers." All such work papers, and the contents thereof, shall be confidential; such papers shall not be disclosed to others, except as the Court may direct and except that the Master, with the Court's approval, may employ, and consult with, such persons as he deems necessary for the performance of his prescribed duties, including particularly persons not affiliated with any of the parties, who possess specialized knowledge concerning federal-subsidized housing programs.

The Court retains jurisdiction over these cases for the entry of such further orders as may be appropriate.

Plaintiffs' motion to appoint a Commissioner granted as modified herein. Matter referred to a Master, according to the rules.