James MORRIS, in his own behalf and as President of Pottawattamie Area Committee, Pottawattamie Area Committee, Fumi Nakashima, Migdalia Ortega, Clive Beckford, Jacqueline Beckford, Tommie Jeff, Anna Jeff, Bessie Kallos, and John D. Blount, Plaintiffs,

v.

CHICAGO HOUSING AUTHORITY, City of Chicago, Illinois Housing and Development Authority, Donald Hoagland, Director, Charles Swibel, Chairman of the Board of Commissioners of the Chicago Housing Authority, Moon Landrieu, Secretary of Housing and Urban Development, Ronald Gatton, Regional Director, Region 5, Housing and Urban Development, Elmer Binford, Director of the Chicago Area Office of Housing and Urban Development, Defendants.

No. 80 C 5688.

United States District Court,
N. D. Illinois, E. D.

Nov. 5, 1980.

Jacob Pomeranz, Cornfield & Feldman, Chicago, Ill., for plaintiffs.

Patrick W. O'Brien, Beverley J. Klein, Mayer, Brown & Platt, Chicago, Ill., for CHA.

Michael O'Connell, Asst. U. S. Atty., Chicago, Ill., for HUD.

### ORDER

BUA, District Judge.

Presently before the court is plaintiffs' motion for a preliminary injunction. Rule 65, Fed.R.Civ.P. A hearing was held on October 31, 1980.

This case presents a challenge to the Chicago Housing Authority's choice of a location for the construction of low income public housing units in the City of Chicago. CHA site selection practices have been the subject of litigation in this district for the last fourteen years. In 1969, the late Judge Austin of this court found that the CHA had, for many years prior thereto, engaged in discriminatory site selection practices in violation of 42 U.S.C. §§ 1981, 1983. *Gautreaux v. Chicago Housing Authority*, 296 F.Supp. 907 (N.D.Ill.1969). Judge Austin entered an injunction ordering that affirmative action be taken to remedy the effects of CHA's past discriminatory practices. *Gautreaux v. Chicago Housing Authority*, 304 F.Supp. 736 (N.D.Ill.1969). This injunction has been modified many times, most recently by Judge Crowley's order of May 18, 1979. *Gautreaux v. Chicago Housing Authority*, 66 C 1459, 66 C 1460 (consolidated).

The plaintiffs contend that CHA construction of low income public housing units at 7433–37 North Wolcott Avenue violates the *Gautreaux* injunction. They also contend that the CHA construction will violate 42 U.S.C. § 1982, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, Title VIII of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, 42 U.S.C. § 1437 *et seq.*, and 42 U.S.C. § 4331 *et seq.*

The court has been presented with a rather broadly pleaded complaint and motion. At this stage of the proceedings, however, the issue has been narrowly limited by plaintiffs. Specifically, the plaintiffs seek a preliminary injunction enjoining the construction of "12 units of very low income large family housing" at 7433–37 North Wolcott Avenue in Chicago.

The evidence adduced at the hearing related mainly to the racial make–up of the neighborhood in which the CHA site is located. The defendant Chicago Housing Authority has commenced construction of two apartment buildings on a lot located at 7433–37 North Wolcott Avenue (CHA site) for housing poor families of low income. The construction site is located one block south of Evanston in the community of Rogers Park in the City of Chicago. When completed, each apartment building will contain six three–bedroom apartments.

Plaintiff James Morris testified that he recently conducted a door–to–door survey of some of the buildings within a one block distance of the CHA site. He calculated on the basis of his informal survey that within a one–block distance of the site, approximately 60% of the residents were white and 40% of the residents were either black, latino or oriental. Chicago Board of Education statistics submitted by plaintiffs at the hearing indicate that, as of October 31, 1979, the student population of the public schools in Rogers Park consisted of approximately 46% white–non–hispanic students and 64% black, oriental and hispanic students. Board of Education statistics do not

provide an exact measure for determining changes in the racial mix of the area, however, because the racial characteristics of the students attending public schools do not necessarily reflect those of the total population of the community.

Census data indicates that the white population of census tract 102, in which the CHA site is located, exceeded 90% in 1970. However, the statistical subgroups of the 1979 census and the Board of Education figures differ, making it difficult to quantify the changes that have taken place in the area since 1970 by comparing these figures. Nevertheless, it is safe to conclude that census tract 102 has become significantly more integrated since 1970.

The testimony of Lorraine Woos corroborated Mr. Morris' estimate of the racial make-up of the area around the CHA site. She also conducted an informal survey of an area just a few blocks northeast of the CHA site and she testified that over 50% of the residents of that area are black and another 15% of the residents are latino. Ms. Woos also testified that approximately 50% of the black residents in the area she surveyed receive some form of public assistance. This area is located within census tract 101 which had a white population exceeding 90% in 1970.

■ To succeed in obtaining a preliminary injunction, the plaintiff must establish a reasonable probability of success on the merits, irreparable injury, the lack of serious adverse effects on others, and sufficient public interest. *Ekanem v. Health & Hospital Corp. of Marion City*, 589 F.2d 316 at 319 (7th Cir. 1978).

■ No evidence was presented at the hearing showing what, if any, involvement the defendants, other than CHA, have in the construction of the two buildings at issue. In particular, it was not shown that there is any federal, state or city involvement in the site selection or financing of this construction. Thus, no predicate for injunctive relief against the federal defendants, the City of Chicago, or the Illinois Housing and Development Authority exists at this time. Assuming arguendo that the CHA construction is financed in part by the federal government, and that the requirements of the federal housing statutes apply in this case, *see e. g. Otero v. New York City Housing Authority*, 484 F.2d 1122 at 1133, 1134 (2d Cir. 1973); *King v. Harris*, 464 F.Supp. 827 at 837, 838 (E.D.N.Y.1979), the plaintiffs have failed to show a likelihood of success on the merits of their claim that the construction of the two apartment buildings at issue would result in a violation of the defendant's duty to promote racial integration. In *Otero*, the court stated:

> "We do not view [the duty to integrate] as a 'one-way street' limited to introduction of non-white persons into a predominantly white community. The Authority is obligated to take affirmative steps to promote racial integration even though this may in some instances not operate to the immediate advantage of some non-white persons. An authority may not, for instance, select sites for projects which will be occupied by non-whites *only* in areas already heavily concentrated with a high proportion of non-whites . . . Not only may such practices be enjoined, but affirmative action to erase the effects of past discrimination and desegregate housing patterns may be ordered." (emphasis added).

Aside from the plaintiffs' failure at this point to persuade the court that the CHA construction of two six-flat buildings will result in the "ghettoization" of this neighborhood,[1] they have failed to persuade the court that the proposed site is located in a community at the "tipping point", i. e. the point at which a further increase in the number of minority residents will result in the "rapid flight of an existing majority class." *Trinity Episcopal School Corp. v. Romney*, 387 F.Supp. 1044 at 1065–66 (W.D. N.Y.1974), *cf. King v. Harris*, 464 F.Supp. at 842 (E.D.N.Y.1979). No evidence was

---

1. Six of the twelve apartments will most likely be filled by qualified low income families drawn from the area surrounding the construction. *Gautreaux v. Chicago Housing Authority*, 304 F.Supp. at 740 Testimony of H. Douglas Murphy.

presented to the court that indicates the existence of any other public housing in the Rogers Park community. Moreover, the plaintiffs have failed to submit any evidence relating to any other CHA construction presently underway. Thus, the plaintiffs have not shown a substantial likelihood of prevailing on the merits of any of their statutory claims or that the failure to issue a preliminary injunction will result in irreparable injury.

Finally, the public interest militates against the issuance of a preliminary injunction. As the court has already noted, the CHA has been ordered by Judge Crowley to take immediate steps to comply with the injunction entered in *Gautreaux*. In June, the defendant narrowly escaped the imposition of a court appointed receiver. The plaintiffs' attempt to demonstrate a violation of the injunction in *Gautreaux* falls short of the mark. Even taking plaintiffs' evidence for all that it is worth, the construction of two six–flat apartment buildings in what the *Gautreaux* injunction terms a "Limited Public Housing Area", would not violate the injunction, as modified by Judge Crowley's May 18 order, unless "no new construction of a like amount of units in the "General Public Housing Area" has commenced.[2] Given the lack of evidence concerning what, if any, other construction the CHA is engaged in at this time, this court is unable to conclude that it should interfere in CHA's apparent attempts to achieve good faith compliance with the court's order in *Gautreaux*. The public interest was clearly expressed by Judge Crowley in his June 6, 1980 order denying the appointment of a receiver to administer CHA.

> [W]ith its increased staff, and the benefits of the suggestions of the urban consultant and the Special Master, the CHA has every opportunity to finally render the relief to the members of the plaintiff class which they so justly deserve and which is so long overdue.

Since the plaintiffs have not shown either a likelihood of success on the merits of their statutory claims or a violation of the court's order in *Gautreaux*, the motion for a preliminary injunction is denied. This order shall constitute the court's findings of fact and conclusions of law. Rule 82, Fed.R. Civ.P.

---

2. The original judgment order in *Gautreaux* defined "Limited Public Housing Area" as "that part of the County of Cook . . . which lies either within census tracts of the United States Bureau of the Census having 30% or more non–white population, or within a distance of one mile from any point on the outer perimeter of any such census tract." "General Public Housing Area" is defined as "the remaining part of the County of Cook." *Gautreaux v. Chicago Housing Authority*, 304 F.Supp. at 737.