Dorothy GAUTREAUX, et al., Plaintiffs,

v.

Samuel R. PIERCE, Secretary of Department of Housing and Urban Development, et al., Defendants.

Nos. 66 C 1459, 66 C 1460.

United States District Court,
N. D. Illinois, E. D.

Aug. 31, 1982.

Alexander Polikoff, Chicago, Ill., for plaintiffs.

John Jensen, Regional Counsel for HUD, Chicago, Ill., Gershon M. Ratner, Associate General Counsel for Litigation, U.S. Dept. of HUD, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This matter is presently before the Court on the joint motion of plaintiffs and the

---

United States Department of Housing and Urban Development ("HUD") for modification of Exhibits A and B to the June 16, 1981, consent decree between those parties so as to reflect certain racial shifts in the demography of the Chicago Standard Metropolitan Statistical Area ("Chicago SMSA") as documented by the 1980 census and by information supplied by persons familiar with the geographical areas in question. The parties' joint motion is filed pursuant to paragraph 8.3 of the consent decree which provides that "[a]fter the availability of final 1980 census data, but not more frequently than every two years thereafter, either HUD or plaintiffs' counsel, without the consent of the other, may request the Court to modify Exhibits A and B hereto."

Exhibits A and B to the consent decree divide the Chicago SMSA into "General," "Limited" and "Revitalizing" areas for the purpose of determining the location of housing to be provided for the benefit of the plaintiff class under the surrogate for "blacks" and that the terms "non-white," "minority", and "blacks" have been used interchangeably in mapping out the General, Limited and Revitalizing Areas with respect to Exhibits A and B to the decree.

Although IHDA correctly notes that, in other contexts, the term "minority" has been used to encompass not only blacks but also other non-whites, sometimes even including Spanish-surnamed persons who may or may not be correctly categorized as "non-white," such an expansive use of the term "minority" is not justified in the context of this case. From its inception, this case, filed on behalf of a class of black applicants for and occupants of public housing in the City of Chicago, has focused on the systematic exclusion of black individuals and families from housing opportunities in the predominantly white areas of the Chicago area and the appropriate remedy for such unconstitutional action by local and national governmental agencies.

As early as 1969, when the late Judge Austin entered the first judgment order in this matter, the parties as well as the Court viewed the central issue in the case for purposes of both liability and relief in terms of blacks vs. whites and not in terms of whites vs. all minorities in the broadest sense of that term. Although Judge Austin used the terms "white" and "non-white" in his opinion, as those terms were used in the 1960 census, see *Gautreaux v. Chicago Housing Authority,* 304 F.Supp. 736, 737 (N.D.Ill.1969), it is clear that "non-white" at that time was virtually a surrogate for "blacks" for purposes of U.S. census data. Indeed, the Bureau of the Census noted that "Negroes constitute 92 percent of all non-whites, [and] many of the data presented are shown for all the non-white races combined. . . ." *United States Bureau of the Census, Census of Population: 1960, Vol. 1, Characteristics of the Population, pt. 15 (Illinois), p. xx.* Contrary to IHDA's assertion, therefore, at the time of Judge Austin's order, it was virtually impossible to separate data for blacks from other non-whites and, in any event, such separation would not have been very useful since blacks made up almost the entire non-white population enumerated by the census.

While the Census Bureau refined its enumeration and reporting procedures in subsequent censuses, HUD and plaintiffs' counsel continued to define the General and Limited public housing areas of the City for the most part in terms of black and white populations. The original Exhibits A and B to the consent decree reflect this state of affairs except that some census tracts that were technically less than 30 percent black were included in the Limited Area if they were adjacent to predominantly black census tracts and showed evidence of rapid racial transition. *See* Plaintiffs' Joint Reply Brief at 3 n.*.[1]

**1.** IHDA's quotations from testimony at the fairness hearing on the consent decree indicating that witnesses who testified in favor of the decree used the terms "minority" and "non-whites" in conjunction with their descriptions of the General and Limited housing areas in Exhibits A and B conspicuously begs the question of whether those witnesses intended to equate "blacks" with "minority" or "non-whites."

IHDA contends that its interpretation of the consent decree is supported by the fact that the class of "eligible persons" for purposes of relief under the decree, see Consent Decree at ¶ 2.3, is not limited to blacks but includes any member of a household occupying non-elderly or handicapped housing, regardless of race. This argument is irrelevant to the issue of the proper interpretation of the term "minority" as used in the decree in describing the General, Limited and Revitalizing Areas set forth in Exhibits A and B. The fact that the class of persons eligible to be placed in housing under the decree includes blacks, whites and other persons indicates nothing with regard to the potential location of the housing to be supplied under the consent decree.

In sum, it is our view that the only reasonable interpretation of the consent decree, consistent with the theory and context of this case since its inception, is that advanced by plaintiffs and HUD in support of the proposed modification of Exhibits A and B of the decree. Accordingly, the parties' joint motion to modify the decree is granted and the Court will enter the order submitted in connection with the parties' motion. It is so ordered.

### ORDER

This matter coming on to be heard on the amended joint motion of plaintiffs and the defendant United States Department of Housing and Urban Development, pursuant to Paragraphs 8.1 and 8.3 of the Consent Decree signed herein on June 16, 1981, and

The Court having heard the presentations of counsel for such parties and determined that the proposed order modifying said Consent Decree is appropriate and is consistent with and in furtherance of the purposes of said Consent Decree,

It is hereby ordered that Exhibits A and B to said Consent Decree be replaced by Exhibits A–1 and B–1 attached hereto and that such Exhibits A–1 and B–1 shall be applicable with respect to initial reservations of contract authority made after the date of this order.

### EXHIBIT A–1

### CENSUS TRACT NUMBERS

102 through 109

201 through 209

301 through 310

318 through 319

401 through 410

501 through 515

601 through 634

701 through 717

801 through 802

810 through 817

901 through 903

1001 through 1007

1101 through 1105

1201 through 1204

1301 through 1305

1401 through 1408

1501 through 1512

1601 through 1613

1701 through 1711

1801 through 1803

1901 through 1914

2001 through 2006

2101 through 2109

2201 through 2229

2301 through 2305

2401 through 2408

2501 through 2505

3001 through 3002

3005 through 3012

3014 through 3020

3101 through 3115

3201 through 3206

3401 through 3405

5201 through 5206

5501

5605 through 5613

5701 through 5705

5801 through 5811

5901 through 5907

6001 through 6016

6101 through 6108

6111 through 6115

6201 through 6204

6302 through 6305

6307 through 6309

6401 through 6408

6501 through 6505

6602 through 6606

6608 through 6609

6611

7001 through 7005

7204 through 7205

7401 through 7404

7503 through 7504

7601 through 7609

7701

8117

8209

8408

8256

8268 through 8276

8290 through 8291

8293 through 8294

8297 (East Chicago Heights portion)

8303

8623

8624 through 8625

8627 through 8629

8631

8632 (excluding Lake Bluff)

8807 through 8808

8812 through 8813

8819 through 8821

8824 through 8825

8830 through 8831

8836.01 (Park Forest South portion)

8836.02 (Park Forest South portion)

8838.01 (Park Forest South portion)

EXHIBIT A–1

Page 2

EXCLUDED FROM THE GENERAL AREA

8092

8095 through 8098

8101 through 8103

8121

8125 through 8126

8130 through 8131

8170 through 8178

8179 through 8180

8204

8214

8236.03

8243 through 8244

8248 through 8249

8251

8255.01

8255.02

8255.03

EXHIBIT B–1

CENSUS TRACT NUMBERS

101

311 through 317

320 through 321

718 through 720

803

809

2317 through 2318

2409 through 2436

2705 south of Madison Street

2715 through 2716

2801 through 2803

2809

2812 through 2813

2815 south of Madison Street

2816 south of Madison Street

2817 through 2826

2828 through 2836

2903

2904 through 2906

**1298**

2910 through 2913

3301

3304 through 3305

3501 through 3503

3506 through 3510

3901 through 3907

4101 through 4114

4201 through 4204

4211

4301 through 4303

4305

4307

4309

4314

4601 through 4602

7207

7502